901 P.2d 178

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Daniel SANCHEZ and Ronald Sanchez, Defendants–Appellants.**

Nos. 22064, 22065.

Supreme Court of New Mexico.

July 26, 1995.

Gary C. Mitchell, P.C., Gary C. Mitchell, Ruidoso, for appellants.

Tom Udall, Attorney General, Jennifer L. Stone, Assistant Attorney General, Santa Fe, for appellee.

## OPINION

MINZNER, Justice.

Appellants, Daniel Sanchez and Ronald Sanchez, were convicted of first-degree murder under NMSA 1978, Section 30–2–1(A)

(Repl.Pamp.1994), attempted first-degree murder with a firearm enhancement under NMSA 1978, Section 30–28–1(A) (Repl. Pamp.1994), and conspiracy to commit first-degree murder under NMSA 1978, Section 30–28–2(A) (Repl.Pamp.1994) and sentenced to life imprisonment under NMSA 1978, Section 31–18–16 (Repl.Pamp.1994). On appeal, they contend that the trial court improperly denied their request to replace a juror, declare a mistrial, or order a new trial after defense counsel realized the juror's sister, a victims' advocate employed by the prosecuting attorney's office, was sitting with the victims' family during the trial. Appellants also contend that the trial court erred in denying their motion for a continuance that they requested in order to obtain expert testimony regarding the blood alcohol level of one of the victims and that the prosecutor made improper statements during rebuttal closing argument. Finally, they contend that they were denied effective assistance of counsel. We note jurisdiction under SCRA 1986, 12–102(A)(2) (Repl.Pamp.1992), and affirm.

*FACTS*

Appellants were charged with shooting Ernest Charles Lovato and Vicente Lovato. According to evidence presented at trial, Appellants, after hearing about a fight between their uncle and the Lovatos, drove to Ernest Lovato's home; there Appellant Ronald Sanchez shot and killed Ernest Lovato, and Appellant Daniel Sanchez shot and seriously injured Vicente Lovato.

The crimes occurred in Valencia County, but due to a change of venue, Appellants' trial took place in Cibola County. Prospective jurors submitted completed questionnaires prior to trial. One juror, responding to the questionnaire, stated that her sister worked for the Cibola County district attorney's office. Later, responding to the trial court's questions about whether the panel members knew the district attorneys from both Grants and Los Lunas who were involved in the case, the prospective juror stated that she knew Ted Howden, one of the prosecutors, because her sister worked in his office. During voir dire, defense counsel did not question the prospective juror about her answers to the questionnaire, nor did defense

counsel further inquire about the prospective juror's relationship to any of the district attorneys involved in the case. Defense counsel did not exercise a peremptory challenge to the juror, nor did they object to her presence on the jury at any time during the trial.

The prosecution's case included testimony by Dr. David Shammel, the pathologist from the Office of the Medical Investigator, who performed the autopsy on Ernest Lovato and testified that at his death he had a blood alcohol level of 0.160%. In addition, Vicente Lovato testified that he and his brother had gone to a local bar, were involved in a fight, and had just parked in the driveway of Ernest's home when Appellants pulled into the driveway. According to Vicente's testimony, Ronald Sanchez fired several shots through the driver's side door, killing Ernest, and Daniel Sanchez fired at Vicente, hitting him in the shoulder. On cross-examination, Vicente testified that he and his brother each consumed only part of two beers. The final witness for the prosecution was Dr. Turner Osler, who operated on Vicente the night he was shot. Dr. Osler testified by video deposition, and his report was admitted without objection at the time the jury heard his video deposition.

After the prosecution rested and following the testimony of the first defense witness, Appellants moved for a continuance so that they could obtain expert testimony to explain the meaning of a sentence in Dr. Osler's report. The sentence, stating "ETOH level is 90," indicated Vicente's blood alcohol content at the time Dr. Osler treated him. The trial court denied the motion, ruling that defense counsel could use a medical treatise to interpret the sentence.

Appellants testified in their own defense, denying that they had committed the offenses charged or that they were present when the victims were shot. Members of their family testified that they were in a town several miles away at the time of the shootings. Renee Sanchez, the wife of Appellant Ronald Sanchez, testified that their automobile had a bad battery and could not have been the automobile Vicente saw.

During closing argument, the prosecutor asked the jury to consider the lack of corroborating evidence to support Appellants' evidence of a bad battery. The prosecutor also argued that Appellants had neither presented evidence nor questioned Dr. Osler about Vicente's blood alcohol level. Appellants objected to both questions on the basis that they improperly shifted the burden of proof. The trial court overruled the objections.

After the jury retired to deliberate, a local law enforcement officer advised defense counsel that the juror's sister was employed by the district attorney's office as a victims' advocate and had sat with the victims' family throughout the trial. On the second day of the jury's deliberations, defense counsel requested that the trial court interview the juror to determine whether she had obtained any information from her sister regarding the case and whether seeing her sister sitting with the victims' families had affected her ability to be impartial. The trial court denied Appellants' motion. Appellants then moved to have the juror replaced with an alternate juror and, in the alternative, for a mistrial. The trial court denied both motions, stating that Appellants had waived the issue and that alternates were not available because they had been dismissed when the jury began to deliberate. Appellants raised this issue again in a motion for a new trial, which the trial court denied.

*JUROR BIAS*

■ Appellants argue that the juror was biased and, as a result, they were deprived of their constitutional right to a fair and impartial jury. An accused is constitutionally entitled to a fair and impartial trial. *State v. Sacoman,* 107 N.M. 588, 593, 762 P.2d 250, 255 (1988). However, a defendant may waive objection for possible juror bias by failing to discover the possible bias. *See State v. McGough,* 536 So.2d 1187 (Fla.Dist.Ct.App. 1989).

In *United States v. Diaz–Albertini,* 772 F.2d 654 (10th Cir.1985), *cert. denied,* 484 U.S. 822, 108 S.Ct. 82, 98 L.Ed.2d 45 (1987), the court determined that the defendant had waived any objection to the participation of a juror who had close relationships to the state police. Prior to the impaneling of the jury,

defense counsel had been put on notice about the prospective juror's relationship with the state police, yet took no action to remove the juror from the panel. The court held that "[w]hen the basis for a challenge to a particular juror can be timely shown, the failure to object at the trial's inception constitutes a waiver of the right to attack the composition of the jury." *Id.* at 657. The court further held that in addition to situations where a juror's misconduct is at issue, this proposition applies in those cases where a defendant is on notice, prior to trial, about a juror's possible bias. *Id.; see also United States v. Uribe,* 890 F.2d 554, 560 (1st Cir.1989) ("A sentient defendant, knowledgeable of a possible claim of juror bias, waives the claim if he elects not to raise it promptly.").

We believe that the principles articulated in *Diaz–Albertini* apply in this case. It is undisputed that the juror revealed the nature of her sister's employment both on her jury questionnaire and in response to the trial court's inquiries. At no time did defense counsel further inquire into the matter. We believe that by failing to question the juror during voir dire, Appellants waived any objection to the juror's participation in the trial.

■ Appellants now argue that defense counsel assumed the juror's sister would not be involved in the trial because she worked for the district attorney in Grants and because Appellants' trial originated in Los Lunas. We do not find this fact persuasive. One of the defense lawyers indicated that he knew the juror's sister, knew that she worked for the prosecutor in Grants, and had seen her in the courtroom sitting with the victims' family. Although he also indicated he had not realized either that the woman he knew was the sister to whom the juror referred or that the woman he knew was the victims' advocate, we are persuaded Appellants had enough information to explore actual bias. The trial court was entitled to conclude that Appellants were aware of the juror's relationship, had decided that it did not merit concern, but had subsequently changed their trial strategy. At the point the issue was raised, the trial court was entitled to conclude that Appellants had waived any objection to the juror based on her sister's role

during trial. A defendant cannot be permitted to "escape the consequences of his earlier knowledge [of possible juror bias] or to reverse his previous position simply because he gambled and lost." *Uribe*, 890 F.2d at 560.

■ Even though Appellants waived any challenge to the juror's participation in the trial, they arguably would be entitled to a new trial if, because of her relationship to a participant in the trial, the juror's bias could be implied. In *Smith v. Phillips*, 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982), the United States Supreme Court rejected the idea of implied bias of a juror, and instead reaffirmed that "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." However, as Wayne R. LaFave and Jerold H. Israel state in 2 *Criminal Procedure* § 21.3, at 732 (1984), *Smith* may not be the last word on whether the implied bias is *always* inappropriate, given Justice O'Connor's special concurrence, in which she states as follows:

> I am concerned ... that in certain instances a hearing may be inadequate for uncovering a juror's biases, leaving serious question whether the trial court had subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice. While each case must turn on its own facts, there are some extreme situations that would justify a finding of implied bias. *Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.* Whether or not the state proceedings result in a finding of "no bias," the Sixth Amendment right to an impartial jury should not allow a verdict to stand under such circumstances.

*Smith*, 455 U.S. at 222, 102 S.Ct. at 948 (emphasis added).

■ Some state courts have presumed bias in instances where the juror has a close relationship with a party or the attorneys trying the case. For example, in *Randolph v. Commonwealth*, 716 S.W.2d 253 (Ky.1986),

the court determined that the defendant's conviction was reversible because an employee of the state's attorney was on the jury. The court stated that a "potential juror may be disqualified from service because of connection to the case, parties or attorneys and that is a bias that will be implied as a matter of law." *Id.* at 255; *see also Haak v. State*, 275 Ind. 415, 417 N.E.2d 321 (1981) (holding that juror bias is implied when juror's husband accepted employment as an attorney with prosecuting attorney's office). In this case, Appellants suggest that the juror's participation in the trial rises to the level of implied bias. We hold that juror bias may be implied as a matter of law in New Mexico. However, we also hold that the facts in this record do not justify that implication.

■ The juror's connection to the attorneys prosecuting the case was indirect and insufficient as a matter of law to support a determination of implied bias under the existing cases. The juror's only connection to the victims arises from her connection to the prosecuting attorneys. Her sister's presence in the courtroom and her physical proximity to the victims' family would not be sufficient in themselves to create an implication of bias under the cases and under Justice O'Connor's description of "extreme situations that would justify a finding of implied bias." *Smith*, 455 U.S. at 222, 102 S.Ct. at 948. Appellants have identified no statute or case that established a particular role for a victims' advocate in the present case, and the record does not indicate the victims' advocate in this case played any special role. *Cf.* 1994 N.M.Laws, ch. 144, §§ 3(G), 7, 9(A)(5) (effective January 1, 1995) (establishing the position of victim's representative; requiring district attorney to provide a victim with the name of a person within the district attorney's office whom victim may contact "for additional information regarding prosecution of the criminal offense"). We are not persuaded that the sister's role as a victims' advocate in this case altered the juror's relationship to the trial proceedings. We are therefore not persuaded that Appellants were entitled to any relief other than a hearing in which they could attempt to prove

actual bias, if they had not waived the right to such a hearing.

In our view, Appellants waived any objection to the juror's participation in the trial based on her sister's relationship to the district attorney's office; therefore, the trial court properly denied Appellants' request to replace the juror with an alternate. In addition, other than their assertion that the juror's relationship to her sister constituted bias, Appellants presented no other evidence that the juror was unable to perform her duties and that Appellants were prejudiced as a result. *See State v. Bojorquez*, 88 N.M. 154, 155–56, 538 P.2d 796, 797–98 (Ct.App.), *cert. denied*, 88 N.M. 318, 540 P.2d 248 (1975). There is no evidence that the jury knew about the relationship, and the trial court apparently specifically asked the juror whether she could be fair and impartial after the court heard her say during voir dire that her sister worked for the district attorney. Appellants made their request that the juror be replaced with an alternate juror after the jury had retired to deliberate, and the alternate jurors had been dismissed for more than one day. SCRA 1986, 5–605(B) (Repl. Pamp.1992), provides that alternate jurors shall be used as replacements prior to when the jury retires to consider its verdict. There is no indication in the record that Appellants brought to the attention of the trial court any special role played in the proceedings by the juror's sister. Thus, we do not believe that the trial court abused its discretion in refusing Appellants' request to replace the juror with an alternate or in denying their motion for a new trial. *See State v. Griffin*, 117 N.M. 745, 749, 877 P.2d 551, 555 (1994) (trial court's grant or denial of motion for new trial will not be reversed on appeal absent a "clear and unmistakable abuse of discretion").

## DENIAL OF MOTION FOR CONTINUANCE

Appellants next contend that the trial court erred in denying their motion for a continuance. The grant or denial of a motion for a continuance rests within the sound discretion of the trial court, and the burden of establishing an abuse of discretion rests with the defendant. *State v. Hernandez*, 115 N.M. 6, 14, 846 P.2d 312, 320 (1993); *see also State v. Perez*, 95 N.M. 262, 264, 620 P.2d 1287, 1289 (1980) ("[I]n the absence of demonstrated abuse resulting in prejudice to the defendant there is no ground for reversal."). Appellants contend that the expert testimony was crucial because it would have assisted them in impeaching Vicente. Dr. Osler's medical report revealed that Vicente had an "ETOH" level of 90, which indicates that he was intoxicated on the evening he was injured. However, he testified that he and his brother had consumed only part of two beers the evening they were assaulted. In response to Appellants' motion for a continuance, the trial court stated that it would take judicial notice that the acronym of "ETOH" means the presence of some level of alcohol in the blood. Defense counsel vigorously argued during closing argument that Vicente's testimony was not credible because he had been drinking, and that his actual blood alcohol level contradicted his testimony that he had only consumed a small amount of alcoholic beverages on the night of the shooting. The defense was able to use the information to support its case; thus, we are not persuaded that any harm resulted from the trial court's denial of the motion for a continuance.

## PROSECUTOR'S REMARKS

Appellants also contend that the prosecutor made inappropriate remarks during the prosecution's rebuttal closing argument that had the effect of shifting the prosecution's burden of proof to Appellants. We disagree.

The trial court has wide discretion in controlling counsel's argument to the jury, and when there is no abuse of discretion or prejudice to a defendant, there is no error. *State v. Jett*, 111 N.M. 309, 314, 805 P.2d 78, 83 (1991). The issue on appeal is whether a prosecutor's comments during closing arguments deprived Appellants of a fair trial. *Id.* Here the trial court committed no error in allowing the prosecutor latitude in closing argument, nor have Appellants demonstrated that they were prejudiced by the prosecutor's comments. Specifi-

cally, in response to Appellants' claim that the car in which they travelled to the victims' residence was not working, the prosecutor stated that no defense witness had produced any evidence, such as a receipt for a car battery, to corroborate their witness's story. The prosecutor may comment on the credibility of defense witnesses and on the lack of corroborating evidence of Appellants' alibi. *See State v. Macon,* 845 S.W.2d 695, 696 (Mo.Ct.App.1993) (holding that prosecutor's comments concerning defendant's lack of corroborating evidence does not constitute an improper shift of the burden of proof in light of the court's instructions on the state's burden); *People v. Medina,* 190 Colo. 225, 545 P.2d 702 (1976) (stating that prosecutor can comment on the defendant's failure to independently corroborate alibi testimony and on the lack of evidence confirming the defendant's theory of case). Lack of corroborating evidence is a factor a jury might find relevant to the accuracy of a witness's memory as well as credibility. We find no abuse of discretion.

### INEFFECTIVE ASSISTANCE OF COUNSEL

▮ Appellants have argued that if their counsel waived any challenge to the juror, trial counsel's failure to recognize the potential bias in the juror and to have her removed from the jury constitutes ineffective assistance of counsel. They also suggest that their counsel were ineffective in failing to obtain an expert to testify regarding Dr. Osler's medical report. Effective assistance of counsel is presumed unless a defendant "demonstrates both that counsel was not reasonably competent and that counsel's incompetence caused the defendant prejudice." *State v. Gonzales,* 113 N.M. 221, 229–30, 824 P.2d 1023, 1031–32 (1992). Appellants have not demonstrated that their counsel was ineffective. When reviewing a claim of ineffective assistance of counsel, we do not second-guess defense counsel's trial strategy and tactics. *Id.* Further, an assertion of prejudice is not sufficient to demonstrate that a choice caused actual prejudice. *See id.* at 230, 824 P.2d at 1032.

The record indicates that Appellants did not use all of their peremptory challenges.

They exercised eight of the twelve permitted them. That fact suggests that the juror possessed qualities that defense counsel wanted represented on the jury. It is not hard to imagine that those qualities might have outweighed the juror's sister's employment. In addition, Appellants have not demonstrated how they were actually prejudiced by the juror's participation in the trial. *Cf. State v. Richardson,* 114 N.M. 725, 729, 845 P.2d 819, 823 (Ct.App.) (defense counsel's question of his client elicited what could reasonably be viewed as a blatant lie in a case the outcome of which turned largely on the defendant's credibility), *cert. denied,* 114 N.M. 550, 844 P.2d 130 (1992).

▮ For the denial of a continuance to create a presumption of ineffective assistance of counsel, the circumstances surrounding the denial must show that a defendant is necessarily prejudiced. *Hernandez,* 115 N.M. at 14, 846 P.2d at 320. "If the denial of a continuance precludes the defendant from raising a potential avenue of defense, a presumption of prejudice is appropriate." *Id.* A presumption is not appropriate on the present record. Appellants used the information concerning Vicente's blood alcohol level to challenge his credibility. Because Appellants have not shown they were otherwise prejudiced by the denial of the continuance, we do not believe it can be presumed from the present record that Appellants received ineffective assistance of counsel because their counsel desired, but were unable to obtain, a continuance during trial.

### CONCLUSION

The judgments and convictions are affirmed.

IT IS SO ORDERED.