This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**NO. 29,207**

**STATE OF NEW MEXICO**,

Plaintiff-Appellee,

v.

**DAVIS WILSON**,

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**W. John Brennan, District Judge**
**Richard J. Knowles, District Judge**

Rane Law Group
August J. Rane
Albuquerque, NM

for Appellant

Gary K. King, Attorney General
Joel Jacobsen, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**CHÁVEZ, Chief Justice.**

Defendant Davis Wilson ("Wilson") appeals directly to this Court from a sentence of life imprisonment plus twenty-one years, of which nine years were suspended. *See* N.M. Const. art. VI, § 2; Rule 12-102(A)(1) NMRA (direct appeal to Supreme Court where sentence of death or life imprisonment has been imposed). On appeal, he raises fifteen issues. Wilson asserts that the trial court erred by (1) refusing to recuse the judge presiding over the preliminary hearing; (2) refusing to sever his trial from the trial of co-defendant Jarrell Frazier ("Frazier"); (3) refusing a request for continuance to procure an expert to rebut the State's fingerprint comparisons; (4) allowing, over objection, a fingerprint comparison from fingerprints taken of him in 1996; (5) allowing evidence of prior crimes and juvenile criminal records to be introduced to the jury through the 1996 fingerprint card; (6) admitting an autopsy photograph of the victim's face; and (7) refusing to direct a verdict at the close of the State's case in chief. He also asserts numerous ineffective assistance of counsel claims, including (1) failure to object to prior statements of a witness, and (2) failure to contest and offer evidence contradicting the time of death. Wilson argues that the jury array violated *Batson v. Kentucky*, 476 U.S. 79 (1986) and the New Mexico Constitution. In addition, Wilson argues that the trial court should have declared a

mistrial because (1) there was a pattern of prosecutorial misconduct, and (2) the trial judge should have disqualified himself. He also asserts that even if any single argument may be rejected, the cumulative effect of these errors prevented him from receiving a fair trial. Wilson's only meritorious claim on appeal is that double jeopardy was violated when he was convicted and sentenced for both kidnapping and felony murder.

We address each of these issues in turn and hold that under *State v. Frazier*, 2007-NMSC-032, ¶ 1, 142 N.M. 120, 164 P.3d 1, Wilson's conviction for the predicate offense of kidnapping is a violation of double jeopardy. Accordingly, we vacate his conviction for kidnapping. We affirm all of his other convictions.

## I. BACKGROUND

Early in the morning of April 14, 2002, Kelly Knoll ("Knoll") was severely beaten, lifted into the bed of his pickup truck, further kicked and beaten, driven away, and shot five times by Wilson and co-defendant Frazier. Police officers responding to a 911 call regarding Knoll's beating arrived at the scene almost immediately after Wilson and Frazier had left with Knoll. Just minutes after arriving at the scene of the beating, the officers heard several shots emanating from somewhere south of their position. Later that same day, Knoll's body was found in the bed of his pickup truck

2

approximately one mile south of where he had been beaten. Of the five gunshot wounds Knoll sustained, the fatal wounds were to his head and chest.

After trial, the jury found Wilson guilty of felony murder, kidnapping, conspiracy to commit kidnapping, aggravated battery, conspiracy to commit aggravated battery, two counts of tampering with evidence, and conspiracy to commit tampering with evidence. However, they acquitted him of first degree murder and conspiracy to commit murder. Wilson was sentenced to life imprisonment for felony murder and twelve years for kidnapping, to be served consecutively. He was also sentenced to nine years for conspiracy to commit kidnapping, which was suspended.

Based on our analysis in *Frazier*, 2007-NMSC-032, ¶¶ 1, 35, we vacate Wilson's conviction for kidnapping. For the following reasons, we affirm all of his other convictions.[1]

---

[1]As a side note, over the several years it took to conclude this case, at one time or another five different district judges in the Second Judicial District Court were assigned to it. Judge Albert S. "Pat" Murdoch presided over the grand jury proceedings and the preliminary hearing. Judge W. John Brennan presided over most of the case, including the trial and the sentencing hearing. Finally, Judge Richard J. Knowles presided over the remainder of the case, from the filing of the judgment and sentence to handling post-trial motions.

## II. DOUBLE JEOPARDY WAS VIOLATED WHEN WILSON WAS CONVICTED AND SENTENCED FOR KIDNAPPING AND FELONY MURDER

Wilson argues that being convicted and sentenced for both felony murder and kidnapping violated double jeopardy as set out in *Frazier*. We agree. *Frazier* clearly discusses this issue and concludes that "the predicate felony is always subsumed into a felony murder conviction, and no defendant can be convicted of both." 2007-NMSC-032, ¶ 1. The State has asked this Court to allow the trial judge to restructure the sentence on remand. However, the State does not cite any authority to support this proposition and we are not inclined to expand our ruling beyond vacating Wilson's kidnapping conviction. *See* Rule 12-213(A)(4) & (B) NMRA.

## III. IT WAS NOT ERROR FOR JUDGE MURDOCH TO DENY THE MOTION FOR RECUSAL

### A. Defense Counsel Had Invoked Judge Murdoch's Discretion, and Under Rule 5-106(A) NMRA, Denying the Motion for Recusal Was Proper

Wilson argues that it was improper for Judge Murdoch to refuse to excuse himself from presiding over the preliminary hearing under NMSA 1978, Section 38-3-9 (1985). Wilson asserts that the judge's discretion was not invoked when defense counsel asked the court to allow him to withdraw as Wilson's attorney. Wilson argues that the request for a continuance to allow for counsel to withdraw was procedural and

4

did not involve significant discretion. In addition, he argues that discretion was not invoked because his attorney was trying to protect his own interests and not those of his client, and therefore Wilson should not have been denied his right to excuse the judge. However, at the hearing on the motion to withdraw, Wilson's attorney stated that he didn't "know if Mr. Wilson is comfortable with myself as counsel," and therefore withdrawal was proper. He also expressed the need for more time for defense counsel, whether that was himself or anyone else representing Wilson, to fully prepare for the preliminary hearing and that he was concerned for Wilson's rights.

"A party may not excuse a judge after the party has requested that judge to perform any discretionary act." Rule 5-106(A). In asking Judge Murdoch to allow him to withdraw as counsel, Wilson's attorney invoked the trial court's discretion and stated that Wilson's best interests should be paramount in any decision made by the judge. Judge Murdoch heard arguments on (1) the potential harm to Wilson if new counsel was brought in so soon before the preliminary hearing, and (2) how the current defense attorney was in the best position to represent Wilson at that hearing. Based on the arguments presented, Judge Murdoch determined that it would be best for Wilson if his attorney did not withdraw before the preliminary hearing, but he did allow counsel additional time to prepare for the hearing. Contrary to Wilson's

assertion that this was not a material issue, we do not look to the issue's materiality, but only to see whether judicial discretion was invoked. *See JMB Retail Properties Co. v. Eastburn*, 114 N.M. 115, 118, 835 P.2d 831, 834 (1992) (Discussing the rule governing election to excuse a judge, the Court stated, "an absolute application of the rule is to us of greater import than either intentional waiver or even the character of the issue on which the discretion of the judge has been invoked. The dispositive issue . . . is whether the motion filed invoked the discretion of the judge."). Judge Murdoch had to make a reasoned decision concerning whether Wilson's attorney could withdraw so soon before preliminary hearing and he used his discretion in making such a decision. It was not improper for him to deny the motion to recuse.

**B.     LR 2-104 NMRA Is an Administrative Rule**

Wilson argues that Judge Murdoch, in violation of LR 2-104(A), was assigned to preside over the preliminary hearing, not on a random basis as required, but because he was the grand jury judge. Further, Wilson contends that Judge Brennan was assigned administratively, not randomly, creating an "impression of possible impropriety." However, Wilson does not contend that LR 2-104(A) is anything other than an administrative rule for the courts, as opposed to a right that he can insist be granted to him. *See In re Byrnes*, 2002-NMCA-102, ¶ 36, 132 N.M. 718, 54 P.3d 996

6

(Discussing an administrative rule of the court governing assignment of a new case number, holding that the argument that the judge could not proceed without following this procedure "exalts form over substance. . . . This is a matter of administration for the court, at least in the absence of prejudice, and no prejudice whatsoever has been alleged in this case."). There is nothing to indicate that LR 2-104(A) was intended to be a right for a defendant as opposed to a rule governing the administration of the courts of the Second Judicial District. As such, an administrative assignment, as opposed to a random assignment, may well fall within the bounds of the rule's purpose. The assignment of Judge Murdoch similarly was administrative and does not create an impression of possible impropriety.

**C. Even if Judge Murdoch Improperly Presided Over the Preliminary Hearing, Any Error Was Cured by a Jury Verdict of Guilty Beyond a Reasonable Doubt**

Although Wilson does not state that he suffered any prejudice beyond the impression of possible impropriety, even if Judge Murdoch should not have heard the case, the error was harmless. The purpose of a preliminary hearing is to determine probable cause. *See* Rule 5-302(C) NMRA ("If the court finds that there is probable cause to believe that the defendant committed an offense, it shall bind the defendant over for trial."). As such, the finding of guilt beyond a reasonable doubt by the jury

7

cured any error that may have resulted from having Judge Murdoch preside over the preliminary hearing. *See State v. Gallegos*, 2009-NMSC-017, ¶ 19, 146 N.M. 88, 206 P.3d 993 ("The grand jury only makes a finding of probable cause. . . . [A]t a trial on the merits, the State has the obligation to prove not just probable cause but guilt beyond a reasonable doubt. . . . [A]ny question of probable cause is necessarily obviated by a finding of guilt." (internal quotation marks and citation omitted)). Because the jury found Wilson guilty beyond a reasonable doubt, any error was cured and we will not reverse Wilson's convictions on this issue.

## IV. THE RECORD WAS NOT ADEQUATELY PRESERVED TO ALLOW THIS COURT TO DETERMINE WHETHER A *BATSON* VIOLATION OCCURRED DURING JURY SELECTION

Wilson asserts that a violation of *Batson* or the New Mexico Constitution occurred during the jury selection process. Based solely on what Wilson can remember, there was only one African American involved during jury selection, and this potential juror was dismissed by the State. However, there is nothing in either the record or in the briefs submitted by the parties to indicate that any violation of either *Batson* or the New Mexico Constitution occurred. "[C]ounsel should properly present this court with the issues, arguments, and proper authority. Mere reference in a conclusory statement will not suffice and is in violation of our rules of appellate

8

procedure." *State v. Clifford*, 117 N.M. 508, 513, 873 P.2d 254, 259 (1994); *see also* Rule 12-213(A)(4) & (B). As there is no record for us to review, we will not consider this issue on appeal.

## V. THE TRIAL JUDGE DID NOT ERR IN REFUSING TO SEVER THE TRIALS OF WILSON AND FRAZIER

Wilson contends that the trial judge erred by refusing to sever his trial from that of Frazier, his co-defendant. Wilson asserts that statements made by Frazier to Frazier's girlfriend, Shawntell Harrison ("Harrison"), would implicate Wilson in Knoll's murder and thus prejudice the jury against him. He argues that these comments were admissible against Frazier but not Wilson, and therefore the trials should not have been joined. At the hearing on the motion to sever, the trial judge ruled that the State would use leading questions to specifically limit Harrison's testimony to avoid implicating Wilson. At trial, Wilson's attorney expressed his concern that Harrison would mention Wilson's involvement in the beating and murder. In response, the trial judge reminded the State to use leading questions, and questioning continued with Harrison making no mention of Wilson or his involvement in either the beating or the shooting. Further arguing that severance was proper, Wilson contends that his Sixth Amendment right to confrontation was violated because he did not have an opportunity to cross-examine Harrison at the preliminary

9

hearing where she originally made the incriminating statements. *See* U.S. Const. amend. VI. Additionally, Wilson argued that he would not have the opportunity to cross-examine Frazier if Frazier did not take the stand. *Id.* Specifically, Wilson appears to argue that Frazier's statement to Harrison that "[t]he guy got shot" rather than "I [Frazier] shot the guy" implicates Wilson as the shooter.

In reviewing whether severance was necessary, we must "determine whether the joint trial resulted in an appreciable risk that the jury convicted for illegitimate reasons. To succeed in proving error in the denial of a motion to sever, a defendant must show that joinder prejudiced him." *State v. Dominguez*, 115 N.M. 445, 453, 853 P.2d 147, 155 (Ct. App. 1993) (citations omitted). "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants by the filing of a statement of joinder for trial, the court may order separate trials of offenses, grant a severance of defendants, or provide *whatever other relief justice requires*." Rule 5-203(C) NMRA (emphasis added). As reflected in the commentary to Rule 5-203, "Paragraph C of this rule allows the admission of a statement of one codefendant deleting all references to the defendant seeking the severance, provided that, as deleted, the statement does not prejudice the defendant seeking severance." *Id.* This sentiment is also expressed in *Richardson v. Marsh*, 481 U.S. 200, 211 (1987), where

10

the United States Supreme Court held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when . . . the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence."

In this case, the statements Frazier made to Harrison were redacted so that any references to Wilson's existence were deleted. When Wilson's counsel objected to the questions on the ground that they were too open-ended, the trial judge verified that the State was aware that it should not let Harrison expand upon her answers so as to implicate Wilson. The State agreed to read into the record the answers that Harrison had previously given so that no mention of Wilson could possibly reach the jury. The judge also made certain that Frazier's attorney was aware of the danger and that Harrison had been warned that no mention of Wilson was to be made either during testimony or elicited on cross-examination. Wilson has failed to demonstrate that he was prejudiced by Harrison's testimony and, in fact, Wilson had agreed that there would not be a problem with the testimony, as long as the State did not elicit any testimony regarding Wilson and as long as Harrison did not mention Wilson. *See Leithead v. City of Santa Fe*, 1997-NMCA-041, ¶ 32, 123 N.M. 353, 940 P.2d 459 ("The City did not request any limiting instruction nor that the jury be instructed to

disregard anything said earlier. Earlier objections to the proposed . . . testimony were based upon lack of foundation and expert qualification, and they were properly overruled. . . . [W]e see no prejudice to the City."). Following *Richardson* and Rule 5-203, the trial court properly redacted Harrison's statements and, as a result, there is no appreciable risk that the jury convicted Wilson for illegitimate reasons. Wilson has also failed to show that he was prejudiced by these statements. Therefore, it was not error for the trial judge to deny the motion to sever.

## VI. WILSON HAS FAILED TO DEMONSTRATE THAT HE WAS PREJUDICED BY INEFFECTIVE COUNSEL WHEN TESTIMONY OF ANTHONY EDWARDS WAS ADMITTED

Wilson argues that his trial counsel should have objected when the prosecutor introduced prior statements made by witness Anthony Edwards ("Edwards"). He also asserts that by failing to object to these statements, his attorney's conduct fell below that of a competent attorney. *See State v. Holly,* 2009-NMSC-004, ¶ 36, 145 N.M. 513, 201 P.3d 844 ("[A]n attorney's conduct must not fall below that of a reasonably competent attorney."). Wilson specifically directs our attention to the point in the trial transcript where Edwards first identifies Wilson and Frazier at the scene of the beating and the prosecutor asked Edwards "[d]o you remember who you said you saw?" Wilson argues that this testimony (1) was hearsay; (2) was improperly admitted; and

12

(3) without it, there was insufficient evidence to place him at the scene. In addition to showing that his attorney's conduct fell below that of a competent attorney, Wilson also must "establish prejudice by demonstrating that [his attorney's] errors were so serious that the result of the proceeding would have been different." *Holly*, 2009-NMSC-004, ¶ 36. Wilson has not shown such prejudice and has failed to show that his attorney erred in failing to object to testimony that was properly admitted under Rule 11-612 NMRA.

Under Rule 11-612, it is proper for a witness who cannot remember certain events to be given the opportunity to refresh his memory by use of a writing. *Id.*; *see also State v. Bazan*, 90 N.M. 209, 212, 561 P.2d 482, 485 (Ct. App. 1977) ("Anything may be used to revive a memory-'a song, a scent, a photograph, all allusion, even a past statement known to be false.'"). The purpose of this rule is to assure that the witness is able to testify in his own words. *State v. Orona*, 92 N.M. 450, 455, 589 P.2d 1041, 1046 (1979). Edwards repeatedly testified that he could not remember the events that took place during the night of the murder and that reading portions of a transcript would help him remember. He also testified that his memory was refreshed after reading portions of the transcript. Under our requirements for refreshed recollection, Edwards' testimony was admissible. *See id.* at 454, 589 P.2d at 1045

13

(Discussing the requirements for refreshed recollection: "The witness's memory on the subject must be exhausted. The time, place, and person to whom the statement was given must be established. If the witness acknowledges the statement, the court may allow the witness to use it to refresh his recollection. It then becomes proper to have the witness, if it is a fact, to say that his memory is refreshed and, independent of the exhibit, testify what his present recollection is.") (internal quotation marks, citations, and emphasis omitted)). Edwards did not read aloud from the transcript of a previous hearing at any time during his testimony, and was told by the State to read the pages to himself. At no time was the jury given copies of the transcript, nor did the State use leading questions to take the place of Edwards' testimony. *See id.* at 455, 589 P.2d at 1046; *State v. Macias*, 2009-NMSC-028, ¶¶ 24, 26, 146 N.M. 378, 210 P.3d 804 ("If the witness testifies that the exhibit might refresh his or her memory, the witness reviews the exhibit without the jury viewing or listening to the exhibit."). When Edwards testified, he was not reading from the transcript, but was testifying based on his independent recollection of who he saw. *See id.*, 2009-NMSC-028, ¶ 25 ("The testimony must come from the witness's restored memory, not from the exhibit, and certainly not from the questioning attorney.").

The statements that Edwards made at the previous hearing were not offered to

14

prove the truth of the matter, but were used only by Edwards to refresh his memory so that he could testify about the event. *See* Rule 11-801(C) NMRA (Defining "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). Independent of the transcript he had been given to review, Edwards testified that he saw Wilson and Frazier at the scene of the beating. The procedure for refreshing recollection was properly followed, and as such, it was not error for Wilson's attorney to fail to object to these properly admitted statements. *See State v. Stenz*, 109 N.M. 536, 538, 787 P.2d 455, 457 (Ct. App. 1990) ("A trial counsel is not incompetent for failing to make a motion when the record does not support the motion."). We hold that Edwards' testimony was properly admitted under Rule 11-612 and it was not improper for Wilson's attorney to fail to object to it.

**VII. IT WAS NOT AN ABUSE OF DISCRETION FOR THE TRIAL JUDGE TO REFUSE WILSON'S REQUEST FOR A CONTINUANCE TO OBTAIN A FINGERPRINT EXPERT**

Wilson argues that the trial judge erred when he refused to grant his request for a continuance to allow his attorney to obtain an expert witness to refute the State's fingerprint evidence. Wilson contends that his attorney did not have the opportunity to anticipate the fingerprint evidence that the State introduced, and therefore he was

15

unprepared to contest it. The fingerprint evidence that Wilson claims was unanticipated consisted of fingerprint standards that had been taken from Wilson in 1996 by the Albuquerque Police Department.

"The grant or denial of a motion for a continuance rests within the sound discretion of the trial court, and the burden of establishing an abuse of discretion rests with the defendant." *State v. Sanchez*, 120 N.M. 247, 253, 901 P.2d 178, 184 (1995). "[I]n the absence of demonstrated abuse resulting in prejudice to the defendant there is no ground for reversal." *State v. Perez*, 95 N.M. 262, 264, 620 P.2d 1287, 1289 (1980). Wilson's contention that the fingerprint evidence offered by the State caught him off-guard is invalid. Prior to trial, the State filed a motion to allow second sets of fingerprints to be taken from Wilson and Frazier. The State argued that allowing new prints would be less prejudicial to the defendants and would make for a cleaner record. Wilson's attorney knew that the State was going to make a comparison to the 1996 fingerprints, and even said that if the State could make the comparison without taking new prints, then "they should do it and go forward with the trial." Wilson's attorney also stated that he strategically chose not to hire an expert because he knew that the State could not get the 1996 fingerprints admitted into evidence.

Wilson has not shown that he was prejudiced by the denial of his motion for a

16

continuance. Wilson's attorney, without the aid of an expert, was able to cast aspersions on the evidence by drawing the jury's attention to the fact that the latent fingerprint from the truck that was claimed to be Wilson's was nothing more than a smudge. *See Sanchez*, 120 N.M. at 253, 901 P.2d at 184 ("The defense was able to use the information to support its case; thus, we are not persuaded that any harm resulted from the trial court's denial of the motion for a continuance."); *State v. Hernandez*, 115 N.M. 6, 15, 846 P.2d 312, 321 (1993) ("During cross-examination of the State's expert witnesses on hair identification, defense counsel established that hair analysis could not absolutely prove identity. Thus, defense counsel adequately placed the State's identification evidence into question."). Wilson's attorney knew that the State's alternative to getting new fingerprints for comparison was to use the 1996 prints, and yet he strategically chose not to hire an expert witness. It was reasonable for the trial judge to deny Wilson's motion for a continuance because defense counsel made strategic decisions to neither obtain an expert or object to the 1996 fingerprints before trial, but instead waited until trial had begun to see if the State would try to admit a comparison based on the 1996 fingerprint card. *State v. Aragon*, 2009-NMCA-102, ¶ 41, 147 N.M. 26, 216 P.3d 276 (not abuse of discretion to deny motion for continuance when delay was result of defense failure to interview

17

witnesses or experts).  We hold that it was not an abuse of discretion to deny the motion for a continuance.

Wilson also fails to show how the result would have been different if his attorney had procured expert testimony to refute the State's fingerprint evidence. *See Holly*, 2009-NMSC-004, ¶ 36.  As the State appears to concede, Wilson is not precluded from developing the record further and raising this issue in a habeas corpus proceeding.  *Duncan v. Kerby*, 115 N.M. 344, 346, 851 P.2d 466, 468 (1993) ("A habeas corpus petitioner will not be precluded . . . from raising issues in habeas corpus proceedings that could have been raised on direct appeal . . . when an adequate record to address the claim properly was not available on direct appeal[.]" (citations omitted)).

## VIII. IT WAS HARMLESS ERROR TO ALLOW EXHIBIT 122 TO BE INTRODUCED INTO EVIDENCE

Wilson argues that Exhibit 122, the 1996 fingerprint card used to compare with the fingerprints on the truck, should not have been admitted into evidence because a proper foundation had not been laid to qualify it under Rule 11-803(F) NMRA, the business records exception to the hearsay rule.  The trial judge admitted the 1996 fingerprint card under Rule 11-803(F) after an expert witness testified that the card was maintained in the regular course of business by the Albuquerque Police

Department ("APD"). Wilson argues that the expert, Detective Herrera, was unqualified to testify that the fingerprints were kept in the regular course of business. Rule 11-803(F) states that a "custodian or other qualified witness" can testify how the records are kept and that they are kept in "the regular practice of that business activity to make the memorandum, report, record or data compilation . . . ." *Id.* Therefore, Detective Herrera was classified as a qualified witness other than a custodian and could establish the fingerprint card as a business record. *See State v. Ruiz*, 94 N.M. 771, 775, 617 P.2d 160, 164 (Ct. App. 1980) (Holding that under Rule [11-]803, "to be 'qualified' the witness must be able to testify as to the mode of preparation of the record and its safekeeping."), *superseded by statute on other grounds as recognized in State v. McCormack*, 101 N.M. 349, 351-52, 682 P.2d 742, 744-45 (Ct. App. 1984).

In order to qualify as a business record, Detective Herrera would have had to lay a sufficient foundation that the 1996 fingerprint card was kept in the regular course of business. *See Ruiz*, 94 N.M. at 775, 617 P.2d at 164; *see also State v. Delgado*, 2009-NMCA-061, ¶ 9, 146 N.M. 402, 210 P.3d 828 (Holding that after a review of the record, "a sufficient foundation for that exception [Rule 11-803(F)] was laid . . . ."). The mere conclusory statement that a record is maintained in the regular course of business is not sufficient to establish the trustworthiness of records that are

created in conformity with a certain routine within the agency.[2] *See State v. Christian*, 119 N.M. 776, 779, 895 P.2d 676, 679 (Ct. App. 1995) ("The reliability of business records is usually premised upon routine, trusted patterns of record generation and the confidence engendered by showing that a particular record is created and maintained in conformity with that routine.").

In laying a foundation, it would have been necessary for Detective Herrera to testify that whenever an individual is arrested, (1) it is APD's regular procedure to fingerprint the individual; (2) APD follows that procedure for fingerprinting individuals and filling out fingerprint cards; (3) the fingerprint cards contain specific information including the date when they were taken and the name of the person taking the fingerprints; (4) the fingerprint cards are signed by the individual whose fingerprints are taken; (5) the fingerprint cards are kept in a specific location; (6) the specific procedure for getting copies of those cards; (7) the 1996 fingerprint card indicates that the fingerprints were taken in conformity with that procedure; and (8) fingerprints are routinely taken and kept in this manner as part of APD's business practices. *See id.* (Holding that the reliability of business records is "supplied by

---

[2]Prosecutor: Are they records maintained in the regular course of the business of the Police Department, and specifically, of the laboratory that you work in?

Detective Herrera: Yes, they are.

20

systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying upon them, or by a duty to make an accurate record as part of a continuing job or occupation." (internal quotation marks and citation omitted)). Testimony meeting these parameters would have been sufficient to show that APD had a duty to make an accurate record and that its records are a reliable source of information. *See id.* at 779-80, 895 P.2d at 679-80. Exhibit 122 should not have been admitted because a proper foundation was not laid to establish it as a business record. However, despite this analysis, we hold that any error resulting from its admittance was harmless.

We reverse for non-constitutional error only when it is reasonably probable that but for the error, the jury's verdict would have been different. *See State v. Barr*, 2009-NMSC-024, ¶ 54, 146 N.M. 301, 210 P.3d 198. In determining whether error is harmless, this Court will consider whether there is

> (1) substantial evidence to support the conviction without reference to the improperly admitted evidence, (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear so minuscule that it could not have contributed to the conviction, and (3) no substantial conflicting evidence to discredit the State's testimony.

*State v. Duffy,* 1998-NMSC-014, ¶ 38, 126 N.M. 132, 967 P.2d 807 (internal quotation marks and citation omitted).

21

In this case, the jury could have found Wilson guilty even without the 1996 fingerprint card in evidence. Under Rule 11-703 NMRA, an expert can rely upon facts and data, and those facts "need not be admissible in evidence in order for the opinion or inference to be admitted." *See also State v. Chambers*, 84 N.M. 309, 311, 502 P.2d 999, 1001 (1972) ("[T]he better reasoned authorities admit opinion testimony based, in part, upon reports of others which are not in evidence but which the expert customarily relies upon in the practice of his profession." (internal quotation marks and citation omitted)). As an expert, Detective Herrera could have relied upon the 1996 fingerprint card in forming the basis of her opinion without the card ever being admitted into evidence. Although defense counsel made objections about to the proper foundation being laid for the admission of the 1996 fingerprint card, at no time did defense counsel make an objection about the genuine nature of the fingerprints. *See State v. Johnson*, 37 N.M. 280, 287-88, 21 P.2d 813, 817 (1933) (holding that as long as there was not a dispute about the genuineness of the comparison prints, it was admissible for the expert to assume the comparison prints were those of the defendant, even if the expert had no first-hand knowledge of that fact). Moreover, Wilson had signed the 1996 fingerprint card and never denied that the fingerprints were his.

Also, at no time did the defense attempt to discredit the fingerprint evidence put forth by the State. Defense counsel only questioned Detective Herrera regarding the fingerprints as business records and never attempted to discredit her ability to make a fingerprint comparison. Although Wilson's attorney did make refer to a fingerprint obtained from the truck as a "smudge," he did not attempt to cross-examine Detective Herrera on her comparison. *See Duffy,* 1998-NMSC-014, ¶ 38. Additional evidence supporting a finding of guilt was an eyewitness who was able to place Wilson both at the scene of the beating and in the truck as it was driven away with Knoll in the bed. Although a proper foundation was not laid, we hold that the error is harmless since there is no reasonable probability that the 1996 fingerprint card affected the jury's guilty verdict.

Wilson also attempts to argue that the fingerprint card was testimonial in nature, and thus a violation of the Confrontation Clause. However, because Wilson failed to properly preserve the issue in the trial court, and relegated any discussion of fundamental error to a footnote in his brief in chief, we do not address the confrontation issue. A defendant alleging fundamental error must be able to "demonstrate the existence of circumstances that 'shock the conscience' or implicate a fundamental unfairness within the system that would undermine judicial integrity

23

if left unchecked." *See State v. Herrera*, 2004-NMCA-015, ¶ 6, 135 N.M. 79, 84 P.3d 696 (internal quotation marks and citations omitted).  Fundamental error will only be applied "if the defendant's innocence appears indisputable or if the question of his [or her] guilt is so doubtful that it would shock the conscience to permit the conviction to stand."  *Id.* (internal quotation marks and citation omitted).

**IX.   IT WAS NOT FUNDAMENTAL ERROR FOR THE TRIAL JUDGE TO ALLOW ADMISSION OF A PRIOR ARREST BECAUSE WILSON INVITED THE ERROR**

Wilson argues that it was fundamental error for the trial judge to allow a record of a past arrest and his juvenile criminal record to be introduced to the jury contrary to Rule 11-404(B) NMRA.  It is not clear from the record whether the 1996 fingerprint card actually went to the jury, but Wilson asserts that it did when the trial judge stated that all exhibits would be sent to the jury and the card had been admitted as an exhibit.

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of . . . identity . . . . " Rule 11-404(B).  Although the 1996 fingerprint card was used to identify Wilson, the information concerning the arrest should have been redacted, and the failure to redact

was error. *See State v. Saavedra*, 103 N.M. 282, 284, 705 P.2d 1133, 1135 (1985) ("The case law in New Mexico is clear and consistent in holding that erroneous admission of evidence of prior crimes of the accused is error, absent special circumstances."), *abrogated on other grounds by State v. Belanger*, 2009-NMSC-025, ¶ 36, 146 N.M. 357, 210 P.3d 783. Even though it may have been error to admit the record of a prior arrest, Wilson's fundamental error claim fails because he has failed to show that he is indisputably innocent so that it would shock the conscience to allow his conviction to stand. *See Herrera*, 2004-NMCA-015, ¶ 6. Wilson's claim also fails because his counsel invited the error. *See State v. Nguyen*, 2008-NMCA-073, ¶ 22, 144 N.M. 197, 185 P.3d 368.

The Court of Appeals recently addressed the issue of invited error in *Nguyen*. *Id.* at ¶¶ 22-23. In *Nguyen*, the Court held that the defendant "[h]aving encouraged the court to proceed with one interpreter . . . is in no position to claim error." *Id.* at ¶ 22. "We reject the idea that a defendant may raise no objection to, and even encourage, a procedure designed to share an interpreter and then after he is convicted claim that the procedure requires reversal. Allowing a defendant to benefit from that kind of conduct could encourage sandbagging and gamesmanship." *Id.*

In this case, Wilson had numerous opportunities to object to the admission of

the 1996 fingerprint card. At the hearing on the motion for new fingerprints, the State argued that it would be better to take new fingerprints because doing so would avoid raising the issue of prior arrests. Knowing that the State was going to use the fingerprint card from Wilson's 1996 arrest, Wilson's attorney stated that if the State "could do it the other way" (presumably using the older prints as opposed to taking new prints), the State "should do it and go forward with the trial[,]" making no objection to the admission of the prior arrest. Similarly, at trial, Wilson's attorney vigorously objected on lack of foundation grounds, but not on the grounds that the prior arrest was improperly admitted. Also, the State was not planning to admit the records themselves, but just planned to have the expert testify regarding comparisons made on fingerprints found on file, and it was Wilson's attorney who insisted that the records be admitted into evidence, again without objecting to the prior arrest record. Finally, although the State's expert acknowledged that the fingerprints were obtained from APD, it was not until voir dire by Wilson's attorney that it was revealed that the fingerprints were kept because they were prints of known individuals who had been arrested. Wilson insisted, and even encouraged, the State to proceed to admit these records without any objection regarding his prior arrest, and he cannot now, after an adverse conviction, complain it was error.

Wilson also makes an ineffective assistance of counsel claim on this issue, stating that this evidence never should have been admitted. As previously discussed, this claim fails because Wilson has failed to show that there would have been a different outcome if the records had not been admitted, and there is nothing in the record to indicate that the outcome would have been different. *See Holly,* 2009-NMSC-004, ¶ 36. Any error regarding the admission of Wilson's prior arrest record was invited error and will not be overturned on appeal.

## X. THE TRIAL JUDGE DID NOT ERR WHEN IT ADMITTED THE POST-MORTEM PHOTOGRAPH OF THE VICTIM'S FACE

Wilson argues that the autopsy photograph showing the gunshot wounds to Knoll's face was entered only to elicit sympathy from the jury and had no other relevance. Since Knoll's death or identity were not an issue in the case, any probative value that the picture may have had was outweighed by its prejudicial nature.

"A trial court has great discretion in balancing the prejudicial impact of a photograph against its probative value." *State v. Saiz*, 2008-NMSC-048, ¶ 54, 144 N.M. 663, 191 P.3d 521 (internal quotation marks and citations omitted), *abrogated on other grounds by Belanger*, 2009-NMSC-025, ¶ 35. Here, the trial judge, outside the jury's presence, listened to arguments from all sides as they explained the gruesome nature of the photograph and the necessity for its admission into evidence.

*See Saiz*, 2008-NMSC-048, ¶ 54 ("In this case, the trial judge proceeded cautiously and prudently, both by considering the basis for his Rule 11-403 [NMRA] decision outside the presence of the jury and by carefully selecting a limited number of photographs to admit while excluding others."). The photograph that was admitted was not a duplicate of other exhibits. Instead, it was used to illustrate the testimony of the forensic pathologist who was testifying, and the trial judge noted that, due to the serious nature of the charges, the State should not be limited to drawings and diagrams. "It is well established that photographs may properly be admitted for such purposes [showing nature of injury, explaining basis for forensic pathologist's opinion, and illustrating forensic pathologist's testimony], even if they are gruesome." *State v. Garcia*, 2005-NMCA-042, ¶ 50, 137 N.M. 315, 110 P.3d 531. Because we conclude that the photograph could properly have been admitted, it was not an abuse of discretion for the judge to admit it into evidence.

**XI.  THERE WAS A PLAUSIBLE TRIAL STRATEGY FOR FAILING TO INTRODUCE EVIDENCE REGARDING ANY INCONSISTENCIES IN THE TEMPORAL PROXIMITY OF KNOLL'S BATTERY AND HIS DEATH**

Wilson argues that his attorney should have introduced evidence at trial that

28

Knoll's death may not have occurred immediately after the beating. Wilson states that his attorney should have made clear to the jury that the time of death could not be determined, it was common to hear gunshots in that area of the city, there were no witnesses to the actual shooting, and other gunshots were heard in that area on the night in question.

"A prima facie case for ineffective assistance of counsel is not made if there is a plausible, rational strategy or tactic to explain the counsel's conduct. . . . A reviewing court will not attempt to second guess that decision." *State v. Jacobs*, 2000-NMSC-026, ¶ 49, 129 N.M. 448, 10 P.3d 127 (citations omitted). According to Wilson's argument on appeal, his attorney would have had to implicitly concede that Wilson was involved in the beating and that the shooting happened later, after Wilson's involvement had ended. This argument would have been contrary to the chosen trial tactic of straight-out denial of any involvement by Wilson in Knoll's beating or death. In his closing argument, Wilson's attorney stated that

> [w]e're not contesting that the people who did the beating at the scene on Gerald are the people that did the murder. Ladies and gentlemen, you don't leave your common sense behind . . . we're not telling you that it makes any sense for someone else to have come along and shot [Knoll].

Wilson's counsel made a rational, tactical decision to completely deny Wilson's

29

involvement in both the battery and the shooting and we will not second-guess that strategy on appeal.

## XII. THE TRIAL JUDGE DID NOT ERR WHEN HE REFUSED TO GRANT A DIRECTED VERDICT FOR WILSON

Wilson argues that the trial judge should have granted his requested directed verdict because the only evidence that could place Wilson at the crime scene was inadmissible and should not have been admitted, namely, Edwards' testimony and the comparison to the 1996 fingerprint card. We have addressed this evidence and have held that it was properly admitted. As previously discussed, Edwards' questionable testimony, even if it was inadmissible, was harmless due to the fact that Wilson was identified properly later in Edwards' testimony. *See* Part VI, *supra*. The admission of the 1996 fingerprint card was also harmless because Detective Herrera could have testified about her comparison without admitting the card into evidence. *See* Part VIII, *supra*.

"[T]he question is whether, viewing *all of the evidence* in a light most favorable to upholding the jury's verdict, there is substantial evidence in the record to support *any* rational trier of fact being so convinced [of guilt beyond a reasonable doubt]." (first emphasis added). *State v. Graham*, 2005-NMSC-004, ¶ 7, 137 N.M. 197, 109 P.3d 285. In viewing all of the evidence in the record, we hold that there was

30

sufficient evidence to support the jury's verdict. Accordingly, it was not error for the trial judge to refuse to grant the directed verdict.

## XIII. PROSECUTORIAL MISCONDUCT

Wilson makes numerous claims of prosecutorial misconduct in his brief in chief, including having the prosecutor vouch for the veracity of one particular version of prior inconsistent statements; fail to procure a witness to the crime scene by not securing a videotape that might have disclosed the individual who reported it; introduce inadmissible hearsay; and vouch for Wilson's guilt and subtly attack his right to remain silent. We reject these claims. Wilson's claim that the State vouched for one particular version of prior inconsistent statements lacks any citation to the record. *See* Rule 12-213(A)(4). The claim that the State failed to procure a witness to the crime scene by securing a videotape cannot be addressed because there is no record from which this Court can determine whether such evidence existed or any steps taken by the State to procure such evidence. *Id.* The hearsay evidence claim has previously been addressed and rejected. *See* Part IV, *supra*. Finally, the comments made in the State's closing argument at trial were not the type of comments that the "jury would naturally and necessarily have taken . . . to be comments on the exercise of the right to remain silent." *State v. Hennessy*, 114 N.M. 283, 287, 837 P.2d 1366,

31

1370 (Ct. App. 1992), *overruled on other grounds by State v. Lucero*, 116 N.M. 450, 453-54, 863 P.2d 1071, 1074-75 (1993). In *Hennessy*, the Court held that

> [w]hile there was evidence to support the jury's determination that defendant was guilty . . . there was also [conflicting evidence] . . . . Under these circumstances . . . we cannot say there is no reasonable probability that the prosecutor's numerous comments on silence were not a significant factor in the jury's deliberations in relation to the rest of the evidence before them, in light of the fact that the evidence against defendant was far from overwhelming.

*Id.* at 289, 837 P.2d at 1372. Here the State made a passing reference in its closing to the fact that Wilson was not seen around the neighborhood following the murder. Unlike *Hennessy*, a search of the record reveals that there was ample evidence to support a guilty verdict, and based on this evidence, it is not likely that the jury relied on this single comment to convict Wilson. We therefore reject any claims of prosecutorial misconduct.

## XIV. WILSON IS NOT ENTITLED TO A NEW TRIAL BECAUSE THERE IS NO EVIDENCE THAT THE TRIAL JUDGE HAD ANY PERSONAL BIAS AT THE TIME OF TRIAL

Wilson argues that Judge Brennan suffered from an addiction to cocaine, and that because Knoll was found to have cocaine in his system at the time of his death,

Judge Brennan should have recused himself because of personal bias in the case. *See* Rule 21-400(A)(1) NMRA ("A judge is disqualified and shall recuse himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: the judge has a personal bias or prejudice concerning a party or a party's lawyer . . . . "); N.M. Const. art. VI, § 18 ("No justice, judge or magistrate of any court shall, except by consent of all parties, sit in any cause in which . . . he [or she] has an interest."). Wilson fails to note that "[t]his language has been construed to encompass an actual bias or prejudice but not some indirect, remote, speculative, theoretical or possible interest." *State v. Williams*, 105 N.M. 214, 219, 730 P.2d 1196, 1201 (Ct. App. 1986) (internal quotation marks and citation omitted). Wilson has offered no evidence of actual bias, other than to speculate that due to Judge Brennan's use of cocaine, he had a personal bias in the case because the victim was also used cocaine. Wilson has failed to prove that Judge Brennan was personally biased at the time of trial, and thus we reject this claim.

**XV.  CUMULATIVE ERROR**

Wilson claims that the accumulated errors in this case require a new trial, because when they are taken together, they denied him a fair trial. "The doctrine of cumulative error requires reversal when a series of lesser improprieties throughout a

trial are found, in aggregate, to be so prejudicial that the defendant was deprived of the constitutional right to a fair trial." *Duffy*, 1998-NMSC-014, ¶ 29. After reviewing all of the claimed errors, this Court finds that only one error was valid. *See* Part II, *supra*. Wilson is entitled to have his conviction for kidnapping vacated, but on the whole, all of his other claims fail. *See* 1998-NMSC-014, ¶ 60 ("We have addressed each error that Duffy claims . . . . We have concluded in each instance that there was no error, or that, if any error existed, it was harmless and was outweighed by the overwhelming evidence supporting conviction."). We conclude that there was no cumulative error.

## XVI. CONCLUSION

We vacate Wilson's kidnapping conviction as violating double jeopardy. The remainder of Wilson's convictions are affirmed. We remand to the district court for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

_____
**EDWARD L. CHÁVEZ, Chief Justice**

**WE CONCUR:**

34

_____
**PATRICIO M. SERNA, Justice**


_____
**PETRA JIMENEZ MAES, Justice**


_____
**RICHARD C. BOSSON, Justice**


_____
**CHARLES W. DANIELS, Justice**

35