1999-NMSC-020

979 P.2d 729

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Wesley Dean HESTER, Defendant–**
**Appellant.**

No. 24,251.

Supreme Court of New Mexico.

April 12, 1999.

**219**

Liane E. Kerr, Albuquerque, for Appellant.

Patricia A. Madrid, Attorney General, M. Anne Kelly, Assistant Attorney General, Santa Fe, for Appellee.

## OPINION

MAES, Justice.

{1} Defendant Wesley Dean Hester was indicted on the following charges: (Count I) murder in the first degree, contrary to NMSA 1978, § 30–2–1(A) (1994); (Count II) conspiracy contrary to NMSA 1978, § 30–28–2 (1979), and NMSA 1978, § 30–2–1(A)(1), (B) (1994); and (Count III) tampering with evidence, contrary to NMSA 1978, § 30–22–5 (1963). Defendant was convicted on all three counts. Defendant was sentenced to life imprisonment on Count I, nine years on Count II, and eighteen months on Count III, to run concurrently. After trial Defendant filed a motion for a new trial based on ineffective assistance of counsel and insufficiency of the evidence, claiming the State failed to show deliberate intent to kill. The motion was denied by the trial court. We affirm the trial court on all counts and find no ineffective assistance.

## I. Background

{2} Alice Rush testified that she and Defendant first attempted to kill Richmond Rush in early December 1994. They combined a rat poison and an herbicide and put it in a bag with Richmond Rush's "crank," a methamphetamine. The poison did not work. On December 16, 1994 the Defendant and Alice Rush planned to kill Richmond Rush by shooting him as he drove home from work. The second plan also was carried out, but Defendant's shots missed Richmond Rush. About 2:30 a.m. on December 17, 1994, Defendant showed Alice Rush the body of Richmond Rush in the back of Defendant's pickup. Richmond Rush had been killed by ten shots to the head and chest. His hands and arms were tied. Together Defendant and Alice Rush transported and disposed of the body, the gun and other items used in the murder.

{3} On Monday, December 19, 1994, Alice Rush filed a petition for a restraining order against Richmond Rush.

{4} After Richmond Rush was killed, Alice Rush and Defendant became lovers. In early June 1995, Defendant beat Alice Rush. Later, Defendant, who was in Oklahoma, told Alice Rush to come to Oklahoma by July 4, 1995, or he would come to New Mexico to get her. Alice Rush became frightened of Defendant's threats: to come and get her, to prostitute her, and to take her children away from her. She went to the police. She called Defendant from the police station. The conversation was recorded, but the recording was of very poor quality. Defendant's angry tone and some expletives were distinguishable. After the phone call, Alice Rush told police that she was afraid of Defendant because he had killed Richmond Rush.

{5} Alice Rush described the details of the body of Richmond Rush as she last saw it: the clothing, the ropes, the plastic bag. Her description matched the state of the body as it was found by police. Then, Alice Rush took officers to the location where the body had been found. That location had not been disclosed to the media.

{6} Alice Rush was granted immunity and testified against Defendant. Alice Rush admitted that certain earlier statements to police had been false and that her petition for a restraining order was false because she knew Richmond Rush was already dead. Alice Rush's attorney testified that he had entered into an immunity agreement on behalf of Alice Rush requiring her to testify truthfully at a preliminary hearing and trial. Her attorney stated that he was not present for earlier statements she gave to police.

## II. Sufficiency of the Evidence

{7} Defendant raises insufficiency of the evidence. This Court will not substitute its judgment for that of the fact finder so long as there is sufficient evidence to support the verdict. See State v. Rojo, 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829; State v. Sutphin, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988). The testimony of Alice Rush provided substantial evidence to support the convictions. Alice Rush testified that she and the Defendant made a conscious decision to kill the Defendant and made two failed attempts to do so. Defendant first attempted this murder by poison, then attempted this murder by lying in wait to shoot the victim as he traveled by, then accomplished this murder by shooting ten bullets into the victim's head and chest. The victim's hands, chest and arms were tied when the body was first observed after the murder. The victim's head was concealed. This evidence supports the jury's conclusion that the Defendant had the intent required for conviction of first degree murder.

{8} In a proper case, this Court would discount criminal witness testimony on review if it were inherently improbable. See State v. Seaton, 86 N.M. 498, 501, 525 P.2d 858, 861 (1974). Defendant argues that the testimony of Alice Rush was inherently improbable. We do not agree. The credibility of Alice Rush was an issue for the jurors to determine; their verdict indicates they believed her. From Alice Rush's testimony concerning the previous attempts on the victim's life and the delivery of the body, the jury could infer both premeditation and the identity of the killer.

## III. Ineffective Assistance of Counsel

{9} Defendant also alleges ineffective assistance of counsel. New Mexico follows the test for ineffective assistance of counsel established in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Proof of ineffective assistance is two-fold: (1) Defendant must show that counsel's performance fell below that of a reasonably competent attorney, and (2) Defendant also must prove "that the deficient performance prejudiced the defense." Id. The Defendant has the burden of proving both prongs of the test. See State v. Baca, 1997–NMSC–045, ¶ 20, 124 N.M. 55, 946 P.2d 1066; State v. Gonzales, 113 N.M. 221, 229–30, 824 P.2d 1023, 1031–32 (1992). Defendant failed to meet either part of the test. Evidence in the record supports the trial judge's commendation of defense counsel's representation of Defendant.

{10} In this case, Defendant identifies several errors of counsel which he claims constitute constitutional ineffectiveness. First, the body was found with one hand in an obscene gesture. Defendant alleges that failure to cross-examine Detective J.R. Lucero as to why he did not ask the ranch hand who found the body about the obscene gesture was ineffective assistance of counsel. Second, Defendant claims he last saw the deceased getting into a pickup with Brian Maddox. Deputy J.R. Lucero and the investigator for the Defendant both searched for Brian Maddox. The defense investigator found a person named Brian Maddox who had been in jail at the time of the murder. Defendant alleges failure to seek out Brian Maddox was incompetency of counsel. Third, on December 24, 1994, blood was observed being washed out of the bed of a white pickup belonging to Isleta Gaming Palace. Defendant alleges that failure to follow up on the pickup at the carwash was ineffective assistance of counsel. The driver of the white pickup and a witness who saw the pickup being washed were both interviewed. It was determined that the blood being washed out of the pickup was fresh. Richmond Rush's body was found on December 23, 1994, and he had been dead for at least a day. Fourth, Lewis Brown, the

deputy medical examiner, testified that Richmond Rush had been dead for more than twenty-four hours when he first examined the body on December 23, 1994. Also, Lewis Brown made a "rough guess" that the body was taken to the location where it was found at least four hours after death. Alice Rush testified that she helped move the body in the early morning of December 17, 1994. Defendant claims his counsel failed to show that Alice Rush could not be telling the truth about the time of the killing and the movement of the body. Defendant bases this allegation on one extreme of the estimate given by Lewis Brown concerning movement of the body; however, Defendant ignores Lewis Brown's emphasis on a "rough guess" and the broad range of time given. Fifth, failure to request an analysis of the poison provided by Alice Rush is alleged to be ineffectiveness of counsel. Sixth, Defendant argues likewise about the failure to object to introduction of certain discovery not provided by the State until the day of trial. Finally, Defendant claims counsel was ineffective because counsel failed to object to the introduction of the black gun box on the grounds of relevancy, failed to object to Alice Rush's testimony that Richmond Rush told her he had been shot at, and failed to object to Detective J.R. Lucero's testimony about his impressions of the relationship between Alice Rush and Defendant based upon hearing a telephone conversation between them. None of Defendant's claimed errors constitute ineffective assistance of counsel.

■ {11} Counsel's failure to ask Detective J.R. Lucero why the detective did not question the ranch hand who found the body about the obscene gesture of the deceased's hand was neither an error nor constitutionally ineffective assistance of counsel. It is not the role of this Court on appeal to second guess trial tactics. *See State v. Sanchez*, 120 N.M. 247, 254, 901 P.2d 178, 185 (1995). We hold likewise on Defendant's second and third claims. Both the State and the defense investigated Brian Maddox and the pickup at the car wash. The defense investigator located a Brian Maddox who was in jail at the time of the murder. There is nothing in the record to indicate that lack of further investigation prejudiced Defendant. Defense counsel used the investigation of blood in the back of a pickup belonging to Isleta Gaming Palace and Defendant's allegation concerning last having seen the victim in the company of Brian Maddox to suggest reasonable doubt. There is no indication that further pursuit of either one would have been effective.

{12} As for the Defendant's fourth point, that counsel was ineffective because counsel did not prove Alice Rush was lying based on the time the body was moved to its final location, we conclude that Defendant misunderstands the testimony of the Deputy Medical Examiner. Again, this failure is neither an error nor constitutionally ineffective assistance of counsel.

{13} On Defendant's fifth point, that counsel failed to request an analysis of the poison found at the home of Alice Rush's mother, we also conclude that this failure does not constitute constitutionally ineffective assistance of counsel. The poisons were alleged to be products commonly kept in a household to kill weeds and pests. Counsel's decision not to request an analysis of the homemade poison is a matter of trial tactics, which we will not second guess on review. *See id.* at 254, 901 P.2d 178. There is nothing in the record to indicate that such an analysis would have made a difference in the outcome of the proceeding.

{14} The Defendant's sixth claimed error is somewhat vague. It involves the defense's failure to object to the introduction of certain discovery not provided until the day of trial. There is nothing in the record to suggest that further pursuit of this evidence would have changed the outcome. The burden is on Defendant to establish ineffective assistance of counsel on these points and he failed to do so.

■ {15} As the seventh alleged error, Defendant states that his counsel did not object to the introduction of the gun box. Defense counsel objected to the introduction of the gun box based upon relevancy and lack of foundation during the testimony of Detective J .R. Lucero. The Defendant alleges two further errors based on failures to object. Decisions regarding objections are matters of trial tactics which do not necessar-

ily equate to ineffective assistance of counsel. *See State v. Peters,* 1997–NMCA–084, 123 N.M. 667, 944 P.2d 896, *cert. denied,* 123 N.M. 446, 942 P.2d 189 (1997).

{16} Defense counsel's representation of his client was more than adequate; both the assistant district attorney and the trial judge noted that his representation was excellent. The mere fact that the defense was not successful does not equate to a finding of ineffective assistance of counsel. Defendant failed to meet either part of the *Strickland* test. Defendant failed to prove that counsel's performance was deficient or that he suffered prejudice.

{17} Viewed in its totality, the defense was cogent, detailed, and extensively investigated. Defense counsel called nine witnesses on behalf of his client and presented an alibi defense through the testimony of Cheryl and Granvil Morgan. Defense counsel extensively cross-examined the State's witnesses to show gaps in the police investigation and to thereby suggest reasonable doubt. Defense counsel extensively cross-examined the State's main witness, Alice Rush, and questioned the inconsistencies and contradictions in her various statements. Defense counsel used the investigation of the Isleta Gaming Palace pickup to imply reasonable doubt. The record as a whole demonstrates that Defendant received a fair trial.

{18} The Defendant also seeks reversal based on cumulative error. The doctrine of cumulative error is strictly applied. It does not apply to these circumstances. *See State v. Martin,* 101 N.M. 595, 601, 686 P.2d 937, 943 (1984). The doctrine of cumulative error cannot be invoked if no irregularities occurred. For these reasons, we affirm Defendant's conviction.

{19} **IT IS SO ORDERED.**

MINZNER, C.J., BACA, FRANCHINI, and SERNA, JJ., concur.