This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                                    NO.  31,674

**JOSEF E. PFAUNTSCH,**

Defendant-Appellant.

**APPEAL FROM DISTRICT COURT OF SAN MIGUEL COUNTY**
**Abigail Aragon, District Judge**

Gary K. King, Attorney General
Pranava Upadrashta, Assistant Attorney General
Santa Fe, NM

for Appellee

Aarons Law Firm, PC
Stephen D. Aarons
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

{1}    Defendant Pfauntsch, a German national and United States permanent resident, appeals the district court's denial of his motion to withdraw his plea of "no contest" to charges of aggravated battery against a household member and criminal damage to property of a household member. He maintains that he was improperly advised of the immigration consequences of the plea, contrary to *State v. Paredez*, 2004-NMSC-036, 136 N.M. 533, 101 P.3d 799, which requires attorneys to determine their clients' immigration status and advise them of the specific consequences of a plea agreement on their immigration status, and that it was therefore error for the district court to deny his motion to withdraw the plea. We conclude that the district court erred in determining that there was no ineffective assistance by the attorney because Defendant failed to disclose his immigration status to the attorney. We reverse and remand for proceedings consistent with this Opinion.

**BACKGROUND**

{2}    With representation by attorney Troy W. Prichard (Prichard), Defendant pled "no contest" to aggravated battery against a household member contrary to NMSA 1978, Section 30-3-16C (2008), and criminal damage to property, contrary to NMSA 1978, Section 30-3-18(A) (2009). At the plea hearing, the district court conducted a plea colloquy during which Defendant told the district court that he was a United States citizen. *See* Rule 5-303 NMRA. The judge approved the plea agreement,

including the portion of the agreement that indicated that the district court had concluded "[t]hat [D]efendant understands that a conviction may have an effect upon [D]efendant's immigration or naturalization status and that . . . [D]efendant has been advised by counsel of the immigration consequences of this plea agreement." Defendant was sentenced to supervised probation for a period of three years.

{3}     The next day, before the judgment and sentence was filed, Defendant filed a motion for reconsideration.  He argued that the district court should reconsider its denial of a conditional discharge, and requested withdrawal of the plea as alternative relief.

{4}     Nearly a month later, the State moved to revoke Defendant's probation based on Defendant's "fail[ure] to report for his initial intake appointment."  Three days after this motion, Defendant filed a pro se motion to change the plea to "not guilty." Alleging that his attorney had "failed to respond to [his] request[,]" Defendant maintained that the plea was made "under pressure . . . by [his] attorney," and that "[his] intelligence was clouded by the use of medical marijuana for several month[s] before and up to the morning of the plea agreement." He stated, "My attorney claimed it was not a 'guilty' plea and he did not explain that I would be losing my civil rights, although the judge did."  Although Defendant argued that "[his] attorney did not

3

explain the extent of the consequences for making a no contest plea[,]" this motion did not mention his immigration status specifically.

{5} The next motion to withdraw the plea agreement was filed approximately nine months later by Defendant's new counsel, Stephen D. Aarons. This motion specifically cited Prichard's failure to "discuss with [D]efendant or the [district] court any possible immigration issue." In the motion, Defendant argued that Prichard was "ineffective per se in failing to make any inquiry as to [D]efendant's status as a citizen born in Germany who had . . . later emigrated to the United States." No affidavits were attached to the motion, but Defendant attached several affidavits to his reply to the State's response in opposition to the motion. One of these was an affidavit in which Prichard stated that "[he] was not aware of [Defendant's] status as a German[-]born immigrant." Prichard also stated that "[Defendant] never before disclosed this status to [him], and[,] therefore[,] I never discussed with [Defendant] certain details of the possible consequences to immigration and naturalization status as a result of pleading no contest or otherwise being found guilty of [a]ggravated [b]attery on a [h]ousehold [m]ember, a third degree felony[.]"

{6} Defendant also attached his own affidavit, in which he stated that "[m]y first attorney, . . . Prichard, knew that I was born in Germany, [and] emigrated to America as an adult." He also stated, "At no time did . . . Prichard discuss that a finding of

4

guilt by the court to a domestic violence felony could affect my immigration and naturalization status" and that "fear of an unknown future impact upon my immigration and naturalization status [among other consequences is a] consequence[] that . . . Prichard did not tell me and would have strengthened my resolve to contest this unjust felony domestic violence conviction."

{7}    After a hearing, the district court made two findings and one conclusion relevant to this appeal. First, it found that "[u]pon questioning from the [district c]ourt, [Defendant] stated that he was a United States [c]itizen." Second, it found that "Prichard states in his affidavit that [D]efendant did not disclose any information that [D]efendant was a German[-]born immigrant and not a U[nited] S[tates] citizen." Finally, it concluded that "[D]efendant cannot complain of ineffective assistance of counsel where he is responsible for the lack of information provided to his counsel and the misinformation provided to this court. Defense counsel is not a 'mind[-]reader' and cannot be expected to anticipate every consequence of [D]efendant's non-disclosure."

{8}    Additional facts are included as pertinent to our analysis.

**DISCUSSION**

{9}    We review the district court's denial of a motion to withdraw a plea for an abuse of discretion. *Paredez*, 2004-NMSC-036, ¶ 5. "The district court abuses its

discretion in denying a motion to withdraw a guilty plea when the undisputed facts establish that the plea was not knowingly and voluntarily given." *Id.* (internal quotation marks and citation omitted). "Where . . . a defendant is represented by an attorney during the plea process and enters a plea upon the advice of that attorney, the voluntariness and intelligence of the defendant's plea generally depends on whether the attorney rendered ineffective assistance in counseling the plea." *State v. Carlos*, 2006-NMCA-141, ¶ 9, 140 N.M. 688, 147 P.3d 897. Thus, if counsel was ineffective in advising a defendant on the terms or consequences of the plea agreement, then the plea was not entered into voluntarily and the district court's acceptance of the plea is an abuse of discretion. *See Paredez*, 2004-NMSC-036, ¶ 5 (stating that "whether [the d]efendant's plea was voluntary and knowing . . . requires th[e] Court to examine whether [the d]efendant should have been informed that his guilty plea . . . almost certainly would result in his deportation[.]"). We review claims of ineffective assistance of counsel de novo. *Carlos*, 2006-NMCA-141, ¶ 9.

**{10}** In order for this Court to assess an ineffective assistance claim on direct appeal, there must be adequate facts in the record. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61; *Paredez*, 2004-NMSC-036, ¶ 22. If this is not the case, "an ineffective assistance claim is more properly brought through a habeas corpus petition, although an appellate court may remand a case for an evidentiary

6

hearing if the defendant makes a prima facie case of ineffective assistance." *Roybal*, 2002-NMSC-027, ¶ 19. In cases like this one, when a prima facie case is made, remand may be more appropriate than habeas corpus proceedings, because "[o]nce [the d]efendant has exhausted his direct appeal, he could be immediately deported." *Paredez*, 2004-NMSC-036, ¶ 23.

{11} "Proof of ineffective assistance is two-fold: (1) [the d]efendant must show that counsel's performance fell below that of a reasonably competent attorney, and (2) [the d]efendant also must prove that the deficient performance prejudiced the defense." *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729 (internal quotation marks and citation omitted). "The [d]efendant has the burden of proving both prongs of the test." *Id.* As to the first prong, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Nevertheless, it is clear that "an affirmative misrepresentation by counsel as to the deportation consequences of a guilty plea is today objectively unreasonable." *Paredez*, 2004-NMSC-036, ¶ 15 (quoting *United States v. Couto*, 311 F.3d 179, 188 (2d Cir. 2002), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010). In addition, "an attorney's non-advice to an alien defendant on the immigration consequences of a guilty plea would also be deficient performance." *Id.* ¶ 16. As a result, "criminal defense attorneys are

7

obligated to determine the immigration status of their clients. If a client is a non-citizen, the attorney must advise that client of the specific immigration consequences of pleading guilty, including whether deportation would be virtually certain." *Id.* ¶ 19. Failure to do so "will be ineffective assistance of counsel if the defendant suffers prejudice by the attorney's omission." *Id.*

{12} We turn now to the facts of this case. First, we note that the parties agree on several significant points. For instance, Defendant and the State agree that Prichard never advised Defendant of the specific immigration consequences of his plea. Similarly, the parties agree that "the burden of determining a defendant's immigration status lies on defense counsel." Thus, as a consequence of these facts, the parties agree that the issue before this Court is whether Prichard asked Defendant about his immigration status and, if so, whether Defendant answered the inquiry truthfully and accurately. The premise behind this framing of the question is that Prichard's failure to advise Defendant on the immigration consequences of the plea is excusable either because, as the State argues, "Prichard had no reason to believe that Defendant was not a United States citizen" or because "it may be inferred that Defendant told . . . Prichard on his own that he was a United States citizen." We reject this premise for two reasons.

{13} First, it is clear that under *Paredez* attorneys have an affirmative duty to determine the immigration status of their clients. Not only is this rule stated explicitly

8

in *Paredez*, *see* 2004-NMSC-036, ¶ 19 ("We hold that criminal defense attorneys are obligated to determine the immigration status of their clients."), but it is implicit in the Supreme Court's ruling that failure to properly advise a non-citizen is ineffective assistance. How else can an attorney ensure that he or she is effective at providing the required advice other than by making an explicit inquiry into the client's immigration status?

{14} To the extent that the parties argue over whether there were indicators of Defendant's immigration status to be found in his accent, his place of birth, the location of his wedding, or the fact that his wife needed an interpreter in court, we conclude that reliance by attorneys on such indicators is, at minimum, ill-advised. Given the great variety of circumstances under which people are born, reared, and obtain citizenship in this country, it is misguided to advise or not advise a client based on conjecture about his or her citizenship. Thus, the absence of external cues that a client is a non-citizen does not excuse an attorney from affirmatively determining the immigration status of the client.

{15} Second, the evidence does not support an inference that Defendant told Prichard that Defendant was a citizen. The State points to three facts: (1) that Defendant told the district court at the plea hearing that he was a citizen, (2) that Prichard's "affidavit does not state . . . that . . . Prichard never *asked* Defendant about his citizenship[,]" and (3) that "Defendant did not appear to understand the meaning of the phrase "United

9

States citizen." The State argues that these facts, together with the presumption that counsel provided adequate assistance, create an inference that Defendant told Prichard that he was a United States citizen. We are not persuaded. The fact that Prichard's affidavit does not address explicitly whether he inquired about Defendant's citizenship status is extraordinarily weak evidence that he actually did ask about citizenship. By this reasoning, the fact that Prichard also does not assert that Defendant told him he was a citizen might mean that Defendant never claimed citizenship—a conclusion directly contrary to the State's argument. *See Stambaugh v. Hayes*, 1940-NMSC-048, ¶ 14, 44 N.M. 443, 103 P.2d 640 ("Where evidence is equally consistent with two hypotheses, it tends to prove neither." (internal quotation marks and citation omitted)). Furthermore, to reach the State's conclusion requires stacking inferences on inferences. *See Gonzales v. Shoprite Foods, Inc.*, 1961-NMSC-123, ¶ 10, 69 N.M. 95, 364 P.2d 352 ("[I]nferences must be reasonably based on other facts established in evidence and not based merely on conjecture or other inferences."). For instance, we must infer that Defendant's statements to the court accurately reflect his conversations with Prichard throughout the representation up to that point, a supposition we are unwilling to make given the differences between the attorney-client relationship and the district court's role during a plea colloquy. *See Paredez*, 2004-NMSC-036, ¶ 12 (stating that "defense counsel is in a much better position [than the district court] to ascertain the personal circumstances of [the] client" (alteration, internal quotation

10

marks, and citation omitted)); *State v. Garcia*, 1996-NMSC-013, ¶ 12, 121 N.M. 544, 915 P.2d 300 ("New Mexico's [R]ule [5-303] governing its plea procedures protects both the important rights of the defendant and ensures the proper administration of criminal law.").

{16}     We conclude that Prichard's failure to advise Defendant of the immigration consequences of his plea cannot be excused on the grounds that Prichard assumed Defendant was a citizen because there was no reason to believe otherwise. We also conclude that the evidence does not establish that Defendant told Prichard that he was a citizen and, therefore, Prichard's failure to advise Defendant properly is also not excused on that basis. Accordingly, it was an abuse of discretion for the district court to conclude that Defendant was prohibited from claiming ineffective assistance because he failed to notify Prichard of his immigration status.

{17}     The second prong of the ineffectiveness test hinges on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Paredez*, 2004-NMSC-036, ¶ 20 (internal quotation marks and citation omitted). That is, "[the d]efendant must show he would not have entered into the plea agreement if he had been given constitutionally adequate advice about the effect that his . . . plea would have on his immigration status." *Id.* (internal quotation marks and citation omitted). In this analysis, we consider whether Defendant made pre-plea statements evincing a desire to go to trial, the strength of the evidence against Defendant, and

11

whether the Defendant has strong connections to this country. *See Carlos*, 2006-NMCA-141, ¶¶ 20, 21. We also may consider the timing of the defendant's motion(s) to withdraw. *See Paredez*, 2004-NMSC-036, ¶ 21 (stating that "[i]t . . . would be logical to infer from the fact that [the d]efendant filed a motion to withdraw his guilty plea only six days after he was sentenced that [the d]efendant would not have pleaded guilty if he had known beforehand of this dire consequence"). "To establish prejudice, a defendant generally must introduce evidence beyond solely self-serving statements." *Carlos*, 2006-NMCA-141, ¶ 20.

{18} On appeal, Defendant established, and the State does not dispute, that (1) Defendant requested reconsideration or withdrawal of the plea agreement the day after it was entered, and (2) he had lived in the United States for over forty years. In addition, Defendant's affidavit includes the text of an email he claims to have sent to Prichard three days before the plea hearing, in which he stated, "I cannot accept responsibility for actions I did not commit" and "I cannot allow myself to be led to slaughter without a fight. Please look at the exhibits and find the right experts to testify." Although the State argues that this email is not probative of Defendant's reluctance to plead "no contest" because the first sentence states, "I request that you file for an immediate appeal should [the Judge] decide to rule in error on Monday[,]" it is sufficient, together with the undisputed facts, to raise "a distinct possibility" that

12

Defendant would have decided against a plea if he had been properly advised. *Paredez,* 2004-NMSC-036, ¶ 22.

{19} Defendant has established a prima facie showing that he was prejudiced by the lack of counsel on the immigration consequences of his plea. *See id.* Because the district court concluded that Defendant did not demonstrate that his counsel was ineffective, it did not reach the issue of prejudice and made no findings as to whether Defendant would have rejected the plea had he been properly advised. "We prefer that the district court address the prejudice issue and provide findings underlying or reasons for the court's ultimate determination." *Carlos*, 2006-NMCA-141, ¶ 22. Hence, we remand for an evidentiary hearing on whether Defendant was prejudiced by his counsel's failure to advise him of the immigration consequences of a "no contest" plea. *See Roybal*, 2002-NMSC-027, ¶ 19 ("[A]n appellate court may remand a case for an evidentiary hearing if the defendant makes a prima facie case of ineffective assistance.").

**CONCLUSION**

{20} Defendant has established that his counsel's performance fell below that of a reasonably competent attorney when counsel failed to advise Defendant of the immigration consequences of a "no contest" plea. Defendant has also made a prima facie showing that justifies holding an evidentiary hearing to determine whether he

13

was prejudiced by his counsel's omission. We therefore reverse and remand to the district court for a determination of whether Defendant was prejudiced by this failure.

{21} **IT IS SO ORDERED.**

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

**RODERICK T. KENNEDY, Chief Judge**

**TIMOTHY L. GARCIA, Judge**