This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**STATE OF NEW MEXICO,**
**Plaintiff-Petitioner,**
**v.**
**RAYMOND SEMINO,**
**Defendant-Respondent.**

Docket No. S-1-SC-36275
SUPREME COURT OF NEW MEXICO
June 3, 2019]

APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY, Cristina T. Jaramillo, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Walter M. Hart, III, Assistant Attorney General, Santa Fe, NM, for Petitioner

Bennett J. Baur, Chief Public Defender, William A. O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Respondent

**JUDGES**

BARBARA J. VIGIL, Justice, wrote the opinion. WE CONCUR: JUDITH K. NAKAMURA, Chief Justice, MICHAEL E. VIGIL, Justice, PETRA JIMENEZ MAES, Justice, Retired, Sitting by designation, CHARLES W. DANIELS, Justice, Retired, Sitting by designation

**AUTHOR:** BARBARA J. VIGIL

**DECISION**

**VIGIL, Justice.**

**{1}** The State appeals from an order granting Petitioner Raymond Semino's petition for writ of habeas corpus. In the underlying case, a jury convicted Petitioner of six counts of criminal sexual penetration under NMSA 1978, § 30-9-11 (2009), and one count each of kidnapping under NMSA 1978, § 30-4-1 (2003), criminal sexual contact

under NMSA 1978, § 30-9-12 (1993), and battery under NMSA 1978, § 30-3-4 (1963). Following an unsuccessful direct appeal, Petitioner filed a petition for writ of habeas corpus in the district court identifying four bases for relief, including ineffective assistance of counsel. In December 2016, the district court granted Petitioner's petition, concluding that trial counsel was ineffective in two respects—first, in failing to investigate and raise Petitioner's competency to stand trial, and second, in failing to investigate the available DNA evidence that a defense expert later deemed exculpatory. The district court further concluded that these two errors "caused significant prejudice" to Petitioner and that had they not occurred, a different result at trial was "reasonably likely." Additionally, the district court concluded that the cumulative effect of the errors increased the likelihood of prejudice such that "[e]ven if [the individual] errors did not generate sufficient prejudice to warrant a new trial, together, the errors were so prejudicial that Petitioner was deprived of a fair trial." The State appeals pursuant to Rule 5-802(N)(1) NMRA. *See id.* ("[T]he state may appeal as of right under the Rules of Appellate Procedure[.]"); *see also* Rule 12-102(A)(3) NMRA (providing that appeals from a grant of a writ of habeas corpus shall be taken to the Supreme Court).

**{2}**     The State asserts that the district court erred in granting Petitioner's petition based on ineffective assistance of counsel because (1) trial counsel did not have sufficient reason to believe that Petitioner may not have been competent to stand trial, (2) trial counsel's decision to pursue a consent defense was a valid legal strategy that made an investigation into the DNA evidence unnecessary, and (3) there was no prejudice stemming from any possible ineffectiveness as a result of trial counsel's failure to investigate the available DNA evidence. We agree with the State that the district court erred in concluding that counsel rendered ineffective assistance of counsel to Petitioner. We therefore vacate the district court's order granting Petitioner's petition for writ of habeas corpus and dismiss his petition with prejudice. Because the parties raise no questions of law that New Mexico precedent does not already sufficiently address, we exercise our discretion under Rule 12-405(B)(1) NMRA to dispose of this case by non-precedential decision.

## I.     BACKGROUND

### A.     The Trial

**{3}**     At trial, the victim, Miranda Baldonado ("Victim") testified to the events that formed the basis of Petitioner's convictions. Victim testified that on July 19, 2007, she and Petitioner had been driving around looking for drugs. When it began to get dark outside, Victim repeatedly asked Petitioner to take her home, and though Petitioner assured Victim that he would, he did not do so. Instead, Petitioner drove to his home, telling Victim that he needed to make a phone call. Victim went with Petitioner into his home and waited in the kitchen while Petitioner went into another room. When Petitioner reappeared, he went to the front door, locked it, and took Victim into his bedroom.

**{4}** Victim testified that Petitioner sexually assaulted her in various ways, including penetrating her vagina with his finger and penis multiple times. Victim also testified that Petitioner forced her to perform oral sex on him and that Petitioner performed oral sex on her. Victim attempted, unsuccessfully, to fight off Petitioner. At one point, Victim hit Petitioner in the nose, causing his nose to bleed profusely. Petitioner then used Victim's underwear to clean the blood off of himself. Victim also testified about various physical injuries she sustained as a result of Petitioner's attack. These injuries were documented by Sexual Assault Nurse Examiner (SANE) Gail Gorenz, who testified at trial about the injuries. At trial, defense counsel presented a consensual sex defense. A jury convicted Petitioner of six counts of criminal sexual penetration and one count each of kidnapping, criminal sexual contact, and battery.

## B.    Habeas Proceedings

**{5}** After an unsuccessful direct appeal, Petitioner filed a petition for writ of habeas corpus. Among the issues raised in his petition, Petitioner claimed that trial counsel was ineffective in failing to (1) investigate and raise his competency to stand trial and (2) investigate the available DNA evidence. With respect to the competency issue, Petitioner claimed that he suffered a brain injury as a result of a motorcycle accident that occurred after the date of the alleged crime but before the trial. Petitioner claimed that his brain injury substantially impaired his ability to assist his lawyer with his defense prior to and during his trial. At the habeas proceeding, Petitioner submitted medical documents relating to the brain injury. The State offered an affidavit from Petitioner's trial counsel, and argued that trial counsel did not have sufficient reason to question Petitioner's competency. The State pointed out that while counsel was aware of Petitioner's brain injury, in his opinion, "Petitioner did not exhibit any noticeable deficit in his ability to understand and assist in his defense." The State also asserted that to establish prejudice, Petitioner must show that he was incompetent to stand trial and had failed to do so.

**{6}** As to Petitioner's second basis for ineffective assistance of counsel, he offered an affidavit from a DNA analyst who opined that the State's report was exculpatory. Specifically, the expert opined that the DNA evidence collected in the case did not support Victim's account of the assault. The expert noted that despite Victim's report that Petitioner used his penis to penetrate her orally and vaginally multiple times and had ejaculated "about four time[s] the whole night, in [her] mouth," "no seminal material/spermatozoa were" found on the seventeen items tested. However, the expert did find Petitioner's blood on four items, including Victim's underwear, which was consistent with Victim's account of having hit Petitioner in the nose resulting in a nosebleed. Additionally, the expert took issue with the State analyst's characterization of the results of two swabs that were tested for the presence of sperm. The State analyst reported that the results were inconclusive "due to debris preventing complete microscopic visualization of [cellular] components." Petitioner's expert characterized the statement as "misleading" and "nothing more or less than a fundamental acknowledgment that 'no evidence of sperm cells was observed.' " Based on the foregoing information, Petitioner argued that trial counsel "should have consulted with a

DNA expert when [he was] alerted to the existence of DNA evidence." Defense counsel had received the State analyst's report, and Petitioner argued, had counsel consulted with an expert, the expert would have reviewed the raw data and determined that the evidence was exculpatory. The State responded that in light of Petitioner's consensual sex defense, the DNA evidence was not relevant to Petitioner's defense and, therefore, trial counsel had no reason to investigate it.

{7}     The district court held a hearing on the petition for writ of habeas corpus on October 17, 2016. Petitioner testified on his own behalf. The State did not call any witnesses. On December 1, 2016, the district court issued a writ of habeas corpus finding two separate instances of ineffective assistance of counsel. The district court found that (1) Petitioner could not effectively communicate with his attorney and thus was unable to assist with his defense; (2) a reasonably competent attorney would have had Petitioner's competency evaluated; and (3) the failure of counsel to do so was prejudicial to Petitioner because he was unable to assist counsel in preparing an effective defense. The second ground upon which the district court concluded that Petitioner received ineffective assistance of counsel rested on trial counsel's failure to investigate and obtain the full DNA report. The district court concluded that trial counsel's failure to obtain the information and present evidence to the jury that no semen was recovered from Victim's examination resulted in prejudicial error. Finally, engaging in a cumulative error analysis, the district court concluded that although the individual errors caused significant prejudice, together, the prejudice was even greater. The district court ultimately concluded that the errors resulted in cumulative prejudice such that Petitioner was deprived of a fair trial.

## II.     STANDARD OF REVIEW

{8}     "When this Court addresses the propriety of a lower court's grant or denial of a writ of habeas corpus based on ineffective assistance of counsel, findings of fact of the trial court concerning the habeas petition are reviewed to determine if substantial evidence supports the court's findings." *Duncan v. Kerby*, 1993-NMSC-011, ¶ 7, 115 N.M. 344, 851 P.2d 466. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion[.]" *State v. Salgado*, 1999-NMSC-008, ¶ 25, 126 N.M. 691, 974 P.2d 661 (internal quotation marks and citation omitted). "Questions of law or questions of mixed fact and law, . . . including the assessment of effective assistance of counsel, are reviewed de novo." *Duncan*, 1993-NMSC-011, ¶ 7.

## III.     DISCUSSION

{9}     To succeed on a claim of ineffective assistance of counsel, a petitioner must show that trial counsel "did not exercise the skill of a reasonably competent attorney and that such incompetent representation prejudiced his case, rendering the trial court's result unreliable." *Id.* ¶ 10 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "[J]udicial review of the effectiveness of counsel's performance must be highly deferential, and courts should recognize that counsel is strongly presumed to have

rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Lytle v. Jordan*, 2001-NMSC-016, ¶ 50, 130 N.M. 198, 22 P.3d 666 (internal quotation marks and citation omitted). To establish prejudice stemming from counsel's deficient performance, there must be a showing that absent the deficiency, there was a reasonable probability that the result of the trial would have been different. *Lukens v. Franco*, 2019-NMSC-002, ¶ 17, 433 P.3d 288. A failure to establish either deficient performance or prejudice is fatal to an ineffective assistance of counsel claim; therefore, if a defendant or petitioner fails to establish either component, we may end the inquiry there. *Id.*; *see also Strickland*, 466 at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

## A.      Petitioner Failed to Establish Prejudice Stemming from Counsel's Failure to Investigate Petitioner's Competency

**{10}**    The district court concluded that trial counsel failed to exercise the skill of a reasonably competent attorney in neglecting to investigate and raise Petitioner's potential incompetence. The State argues that the information known to trial counsel was insufficient to raise a question about Petitioner's competency. We need not address the issue of a potential deficiency on counsel's part, because even if counsel's performance was deficient, Petitioner's ineffective assistance of counsel claim would nonetheless fail because he failed to establish prejudice stemming from counsel's failure to investigate his competency.

**{11}**    The district court found that the prejudice arising out of counsel's failure to investigate or raise competency below was Petitioner's inability to assist his attorney to prepare an effective defense. Such a finding is tantamount to a determination that Petitioner was incompetent to stand trial. *See State v. Najar*, 1986-NMCA-068, ¶ 8, 104 N.M. 540, 724 P.2d 249 (explaining that competence to stand trial requires that a defendant have a factual understanding of the charges against him, that he understand the nature and significance of the proceedings, and that he have the ability to assist his attorney in his defense); *ABA Criminal Justice Mental Health Standards*, Standard 7-4.1(b) (2016), *available at* https://www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/mental_health_standards_2016.authcheckdam.pdf (last visited May 2, 2019) ("The test for determining the defendant's competence to proceed when the defendant is represented by counsel should be whether the defendant has sufficient present ability to consult with counsel with a reasonable degree of rational understanding and otherwise to assist in the defense, and whether the defendant has a rational as well as factual understanding of the proceedings."). If Petitioner was incompetent to stand trial, the

prejudice stemming from trial counsel's failure to investigate and raise competency is readily apparent. *Cf. State v. Rotherham*, 1996-NMSC-048, ¶ 13, 122 N.M. 246, 923 P.2d 1131 ("The law has long recognized that it is a violation of due process to prosecute a defendant who is incompetent to stand trial.").

**{12}** The district court relied entirely on Petitioner's own testimony at the habeas hearing in determining that he was not competent at trial, which was the impetus for the finding of prejudice. In making this determination, the district court credited Petitioner's testimony that (1) he suffered a traumatic brain injury following the incident that formed the basis for the charges in the case, (2) he "had great difficulty processing information and almost no memory of the incident for which he was charged," (3) when communicating with counsel, he was unable to answer direct questions and instead had to start at the beginning of his memory of his relationship with Victim and recount the events from there, (4) trial counsel became frustrated with communication difficulties and gave up on getting information from him, (5) during this time, he was crawling from his bed to the toilet to vomit and suffered from dizzy spells and migraines, and (6) he did not understand that he had been charged with having nonconsensual intercourse with Victim and that when he told his attorney that everything that had occurred between him and Victim was consensual, he was referring to kissing and hugging. This testimony, standing alone, is insufficient to support a finding that Petitioner was incompetent at the time of trial.

**{13}** Our statutes, rules, and case law set forth a detailed process for determining whether a defendant is competent to stand trial. *See generally* NMSA 1978, §§ 31-9-1 to -1.1 (1988, as amended through 1993); Rule 5-602 NMRA (1991); *State v. Flores*, 2005-NMCA-135, ¶¶ 17-19, 138 N.M. 636, 124 P.3d 1175. Under the law in effect at the time that Petitioner's trial and habeas proceedings occurred, "evidence that raise[d] a reasonable doubt [about] the defendant's competency to stand trial" was required to be presented to the court.[1] *Flores*, 2005-NMCA-135, ¶ 17. If that threshold requirement was met, the defendant's competency would then need to be evaluated by a qualified professional before the court could find that the defendant was incompetent to stand trial. *Id.* ¶¶ 17-19. The defendant always "bears the initial burden of proving his or her incompetence by a preponderance of the evidence standard." *State v. Chavez*, 2008-NMSC-001, ¶ 11, 143 N.M. 205, 174 P.3d 988.

**{14}** Standing alone, a defendant's own statements about his competency before and at trial are insufficient to support even a reasonable doubt as to his competency—much less a conclusion that he was actually incompetent. As our Court of Appeals explained in *Flores*, "something more than counsel's unsubstantiated assertions and opinion regarding a defendant's competency is required" to raise a reasonable doubt about a defendant's competency. 2005-NMCA-135, ¶ 27. This standard applies equally to a defendant's own statements to the court about his competency. While counsel's and a defendant's observations and statements may be considered by a court in assessing a

---

[1]In 2019, a new rule related to competency went into effect. *See* Rule 5-602.1 NMRA. Under the new rule, the movant must establish a "reasonable belief that the defendant may not be competent to stand trial," Rule 5-602.1(F), which is a different standard than the former "reasonable doubt" standard. Rule 5-602(B)(2)(a) (1991).

defendant's competency, "those observations and opinions alone cannot trigger reasonable doubt about the defendant's competency." *Id.* ¶ 29; *see also Najar*, 1986-NMCA-068, ¶ 12 ("When a defendant or his counsel asserts the doubtfulness of that competency, the assertions must be substantiated."). If such evidence is insufficient to trigger reasonable doubt, it certainly cannot, without more, support a finding that a defendant is or was incompetent to stand trial—be it before, during, or after trial.

**{15}** It is undoubtedly more difficult to assess a defendant's competency retrospectively than before—or even during—trial. *See Pate v. Robinson*, 383 U.S. 375, 387 (1966) ("[W]e have previously emphasized the difficulty of retrospectively determining an accused's competence."). Whatever might be required to establish incompetence in post-conviction proceedings, it cannot be less than what would have been necessary to raise a reasonable doubt about Petitioner's competency in the underlying proceedings.

**{16}** In this case, although Petitioner submitted some documentation in the course of the habeas proceedings to substantiate his head injury, he failed to provide any reliable extrinsic evidence, such as an expert opinion, that he was incompetent during the underlying criminal proceedings. Where the district court's finding of prejudice hinges on Petitioner's incompetence during the underlying criminal proceedings that led to a conviction, an expert opinion is arguably even more critical than it would have been at the time of trial. Indeed, it is difficult to imagine a situation in which an expert opinion would be more critical. Before and during trial, the trial court has the opportunity to observe the defendant first-hand during the course of criminal proceedings, but that is not the situation during habeas corpus proceedings, when the district court's vantage point is further removed and limited by the passage of time. Therefore, in habeas proceedings, an expert opinion is critical to assessing a defendant's competency at the time of trial. In this case, Petitioner failed to provide an expert opinion or any extrinsic evidence to support his contention that he was incompetent to stand trial during the underlying proceedings, choosing instead to rely wholly on his own testimony.

**{17}** Under the circumstances, we hold that the district court's determination that Petitioner was incompetent in this case was not supported by substantial evidence. *See Lytle*, 2001-NMSC-016, ¶ 32 ("To be substantial, it must be such relative evidence as a reasonable mind is willing to accept as adequate support for a conclusion, and it must amount to more than mere speculation or conjecture." (internal quotation marks and citation omitted)). Absent substantial evidence to support the finding of prejudice based on incompetency, the district court's ultimate conclusion of ineffective assistance of counsel cannot be sustained.

**B.     Trial Counsel's Choice of Defense and Decision to Forego an Investigation into the DNA Evidence Was Not Unreasonable**

**{18}** As noted previously, during habeas proceedings Petitioner offered an affidavit from an expert who opined that the available DNA evidence was exculpatory in that it did not support Victim's account of the assault. The district court concluded that trial

counsel's failure to investigate the DNA evidence or present evidence to the jury consistent with the defense expert's analysis of that evidence was ineffective and resulted in prejudicial error. The district court's conclusion that trial counsel was ineffective in this regard requires us to consider the reasonableness of counsel's decision to pursue a consensual sex defense on Petitioner's behalf and to forego an investigation into the DNA evidence. *See Lytle*, 2001-NMSC-016, ¶ 40 ("Counsel has a duty to make reasonable investigations *or* to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." (quoting *Strickland*, 466 U.S. at 691)).

**{19}** The State argues that an investigation into the available DNA was unnecessary because Petitioner's defense at trial was that he had consensual sexual intercourse with Victim. The State further asserts that trial counsel's decision to pursue a consensual sex defense and not to present evidence that Petitioner and Victim had not engaged in sexual intercourse was a valid legal strategy, which should not be second-guessed. *See State v. Sanchez*, 1995-NMSC-053, ¶ 20, 120 N.M. 247, 901 P.2d 178 ("When reviewing a claim of ineffective assistance of counsel, we do not second-guess defense counsel's trial strategy and tactics."). Finally, the State asserts that even if trial counsel's performance was deficient, Petitioner was not prejudiced by trial counsel's failure to investigate the DNA report. We need not reach the question of prejudice because we agree with the State that trial counsel's choice of defense in this case was not an unreasonable strategy; therefore, the deficient performance prong of an ineffective assistance of counsel claim was not satisfied.

**{20}** "Counsel's choice of defenses will not be disturbed unless the choice appears wholly unreasoned or deprives the defendant of his only defense." *State v. Baca*, 1993-NMCA-051, ¶ 34, 115 N.M. 536, 854 P.2d 363; *see also State v. Vigil*, 1990-NMSC-066, ¶ 19, 110 N.M. 254, 794 P.2d 728 ("We will not substitute our own judgment over trial tactics for the judgment of defense counsel when it is not clear that the defendant was deprived of a meritorious defense because the judgment of defense counsel was without excuse or justification.").

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Lytle*, 2001-NMSC-016, ¶ 26 (quoting *Strickland*, 466 U.S. at 689).

**{21}**    Consistent with the foregoing standard, we consider the information known to counsel when he made the decisions that Petitioner contends were deficient. Petitioner was charged with four counts of criminal sexual penetration and other related charges. In addition to Victim's statements, there was physical evidence to support her claim that she had been physically and sexually assaulted. The nurse who performed the SANE examination testified that Victim had numerous bruises and abrasions on her face and body and swelling and lacerations in her vaginal area. Additionally, a scientific analysis was performed on the swabs obtained during the SANE examination and the results, which were disclosed to Petitioner's attorney, indicated that (1) the vaginal and cervical swabs were "inconclusive for the presence of semen," (2) no semen was detected on the recovered underwear or the oral, speculum, or right inner labia swabs, and (3) various other swabs tested negative "in the presumptive test for semen." The report also stated that Petitioner could not be excluded as the donor of the DNA evidence found on some of the various items tested and that Petitioner's DNA was found on the swab from Victim's fingernails.

**{22}**    At the habeas hearing, Petitioner testified that he told his attorney he had almost no memory of the incident. He did remember "meeting [Victim] at the casino[,] and going out with her several times[,] and being at [a friend's] house, but [he] did not remember having sex with her that night." He also testified that his attorney had proposed a consent defense and he agreed, responding, "Yes, everything that that person did with me was never not consented to. We were always consented to, to everywhere we went, to everything that we did." Petitioner explained, however, that when he agreed to the consent defense, he "thought [that] consensual sex meant the kissing and holding of hands" and at the time, he did not understand that it meant sexual intercourse.

**{23}**    Presented with this set of facts and the information from his client, we disagree that trial counsel's decision to offer a consent defense and forego an investigation into the DNA evidence was unreasonable. The district court concluded that trial counsel's failure to obtain the information and present evidence to the jury that no semen was recovered from Victim's SANE examination fell below an objective standard of reasonableness. In reaching this conclusion, the district court rejected the State's argument that trial counsel need not have investigated the DNA evidence because Petitioner offered a consensual sex defense. The district court reasoned that Petitioner "credibly denied telling trial counsel that he had consensual sex with [Victim]." This finding, however, does not support a conclusion that counsel was ineffective in this case. First, Petitioner's statement to his attorney that "[he] did not remember having sex with [Victim]" was not a denial that sexual intercourse occurred. This statement, combined with Petitioner's assertion that everything that happened between him and Victim was "consented to" and his agreement to a consensual sex defense, could lead a competent attorney to decide that investigating the DNA evidence was unnecessary because a consent defense was the best defense theory to present to the jury. Counsel could not be expected to know that when Petitioner agreed to a consent defense, he thought that consensual sex meant something other than sexual intercourse.

**{24}** Second, the results in the laboratory report did not present a circumstance such that it was unreasonable for counsel not to inquire into the viability of an alternative defense. Petitioner could not be excluded as the donor of DNA evidence found on some of the items tested and his DNA was found on the swab taken from Victim's fingernails. Although the report indicated that the results for some of the swabs tested for semen were negative, the results for other swabs tested were "inconclusive." Additionally, the absence of semen on some—or even all—of the swabs does not prove that sexual intercourse, oral sex, or digital penetration did not occur. In short, given Petitioner's general lack of memory, Victim's statements about the assault, and the corroborating evidence, it was not unreasonable for trial counsel to forego an investigation into the DNA evidence based on his decision to offer a consent defense. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether."). Although counsel could have investigated whether the DNA evidence might support an alternative defense, counsel's decision not to investigate that possibility was within the permissible range of effective representation under the circumstances, as only reasonable competence is required, not an ideal or errorless defense. *See State v. Orona*, 1982-NMSC-002, ¶¶ 8-9, 97 N.M. 232, 638 P.2d 1077.

**{25}** Finally, even if trial counsel had considered the disclosed report more carefully and decided to consult with an expert, trial counsel still could have reasonably decided to offer a consent defense rather than the theory that no sexual intercourse occurred. A competent attorney would have had to calculate the odds of success for two viable but inconsistent defense theories. Implausible or conflicting defense theories can undermine the credibility of counsel and the viability of the entire defense case. *See State v. Dickert*, 2012-NMCA-004, ¶ 29, 268 P.3d 515 ("[A] criminal defendant who presents a jury with two totally inconsistent defenses must accept the potential peril of doing so."). Counsel could reasonably decide to offer a consent defense even if he knew that a defense expert was willing to testify that the results were not, as the State's expert noted, inconclusive but rather that there was a complete absence of semen anywhere. In light of the other evidence against Petitioner, the absence of semen was not conclusive proof that the described instances of sexual assault did not occur. Victim testified that Petitioner only ever ejaculated in her mouth. Therefore, the absence of semen elsewhere was meaningless insofar as it did not speak to Victim's claim that Petitioner penetrated her with his penis and fingers and performed oral sex on her. Even the absence of semen from Victim's oral swabs does not prove that Petitioner did not force Victim to engage in cunnilingus. It only potentially undermines Victim's claim that Petitioner ejaculated in her mouth. In short, the DNA evidence results reported by the defense expert at the habeas proceedings would not have proved Petitioner's innocence—at most, it would have given him a second viable defense. *See Baca*, 1993-

NMCA-051, ¶¶ 29-32 (rejecting a claim of ineffective assistance of counsel, in part, because the failure to perform testing on evidence that could have helped the defendant is insufficient to establish prejudice). When faced with two viable yet conflicting defenses, it is not ineffective assistance of counsel to chose one over the other. *See, e.g.*, *State v. Gonzales*, 2007-NMSC-059, ¶¶ 13-16, 143 N.M. 25, 172 P.3d 162 (rejecting claim of ineffective assistance of counsel based on counsel's failure to offer a defense that "would have been in direct conflict with the defense trial strategy of maintaining [the d]efendant's innocence"); *Vigil*, 1990-NMSC-066, ¶¶ 17-18 (holding that counsel was not ineffective for failing to call an expert on battered women because counsel could have reasonably decided that using an expert to argue that "the killing was the result of a post-traumatic stress disorder [was] inconsistent with the claim of an accidental discharge of the gun"). In the same vein, the fact that the defense offered was unsuccessful and there existed another viable defense does not require a finding of ineffective assistance of counsel. *See State v. Hester*, 1999-NMSC-020, ¶ 16, 127 N.M. 218, 979 P.2d 729 ("The mere fact that the defense was not successful does not equate to a finding of ineffective assistance of counsel."). Therefore, Petitioner has failed to carry his burden in establishing the first part of an ineffective assistance of counsel claim.

## C.  The District Court's Finding of Cumulative Prejudice

**{26}**  Lastly, we address the district court's determination that the combination of the two instances of ineffective assistance of counsel resulted in cumulative prejudice. This Court has not addressed whether cumulative prejudice could serve as the basis for a successful ineffective assistance of counsel claim. Some courts have held that cumulative prejudice may serve as the basis for an ineffective assistance of counsel claim where there are at least two instances of deficient performance but there is insufficient prejudice stemming from each one individually. *See, e.g.*, *Harris By and Through Ramseyer v. Wood*, 64 F.3d 1432, 1438-39 (9th Cir. 1995) (holding that counsel's numerous deficiencies cumulatively prejudiced the defendant). Because we determine that at least one of Petitioner's two claims of ineffective assistance of counsel fails because of a failure to establish deficient performance, we do not reach the question of cumulative prejudice.

## IV.  CONCLUSION

**{27}**  Petitioner has failed to overcome the strong presumption of effective assistance of counsel. Even if trial counsel acted unreasonably in failing to investigate or raise Petitioner's potential incompetence, we conclude that there is insufficient evidence to support the district court's finding of prejudice. Furthermore, we conclude that trial counsel's decision to forego an investigation into the available DNA evidence based on his choice of defense was not unreasonable under the circumstances. Accordingly, we vacate the district court's order granting Petitioner a writ of habeas corpus and dismiss his petition with prejudice.

**{28}  IT IS SO ORDERED.**

**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**PETRA JIMENEZ MAES, Justice, Retired, Sitting by designation**

**CHARLES W. DANIELS, Justice, Retired, Sitting by designation**